Adam R. Alper (S.B.N. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
aalper@kirkland.com

Timothy G. Majors (S.B.N. 228275)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
tim.majors@kirkland.com

Daniel W. Mcdonald (*Admitted Pro Hac Vice*)
dmcdonald@merchantgould.com
William D. Schultz (*Admitted Pro Hac Vice*)
wschultz@merchantgould.com
Eric Chad (*Admitted Pro Hac Vice*)
echad@merchantgould.com
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2215
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Attorneys for Defendant
CARDIOCOM, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBERT BOSCH HEALTHCARE SYSTEMS, INC., | Case No.    3:14-CV-01575-EMC |
| Plaintiff, | **DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND MOTION TO STAY LAWSUIT PENDING INTER PARTES REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT** |
| v. | |
| CARDIOCOM, LLC, | |
| Defendant. | Date:    June 19, 2014<br>Time    1:30 pm<br>Judge:   Edward M. Chen - Dept. 5 |

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT

CASE NO. 3:14-CV-01575-EMC

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 2

II.     FACTS ................................................................................................................. 4

        A.      Bosch has sought to license the patents in suit to Cardiocom and others since
                at least 2006; it does not use this patent portfolio to maintain any market
                exclusivity. ................................................................................................ 4

        B.      Bosch filed this case in Texas in an attempt to avoid another stay; the case
                remains in its early stages. ......................................................................... 6

                1.      The Northern California Court stayed Bosch's first suit against
                        Cardiocom pending the outcome of reexaminations. ....................... 6

                2.      In response to the stay of the First Case, Bosch brought this case in a
                        distant and inconvenient forum alleging infringement of patents it
                        could have asserted in the First Case. ............................................. 8

                3.      Little activity has occurred on the merits of the case........................ 9

        C.      Five of Cardiocom's Petitions for IPR regarding four of the Patents in Suit
                have been granted; the claims not subject to granted IPRs are subject to other
                pending PTO proceedings. .......................................................................... 10

III.    ARGUMENT ...................................................................................................... 11

        A.      This case provides an even more compelling case for a stay than the First
                Case, which already has been stayed. ....................................................... 11

        B.      Stays are favored in cases like this where they are likely to narrow issues
                without unduly prejudicing the parties. .................................................... 13

                1.      The case is in its early stages, favoring a stay. ............................... 15

                2.      The Board's likely cancellation of most or all of Bosch's asserted
                        claims makes this case a particularly good candidate for a stay.......... 17

                3.      A stay of the case will not unduly prejudice or present a clear tactical
                        disadvantage to Bosch........................................................................ 19

IV.     CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abbott Labs. v. Cordis Corp.*,
    710 F.3d 1318 ...................................................................................................12

*Brixham Sol. Ltd. v. Juniper Networks, Inc.*,
    No. 13-cv-00616, 2014 U.S. Dist. LEXIS 58770 (N.D. Cal., Apr. 28, 2014)............14, 15, 17

*Capriola Corp. v. LaRose Indus., LLC*,
    No. 8:12-cv-2346, 2013 U.S. Dist. LEXIS 65754 (M.D. Fl. Mar. 11, 2013)........................12

*Click-to-Call Techs. LP v. Oracle Corp.*,
    No. A-12-CA-468-SS, slip op. (W.D. Tex. Nov. 25, 2013) .............................................15, 21

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988)..................................................................................13

*Evolutionary Intelligence, LLC v. Facebook, Inc.*,
    Nos. C 13-4202 SI, C 13-4204 SI, 2014 U.S. Dist. LEXIS 9149
    (N.D. Cal. Jan. 12, 2014) .........................................................................................14, 17

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
    No. C-13-4513-RMW, 2014 U.S. Dist. LEXIS 26382 (N.D. Cal. Feb. 28, 2014)......14, 15, 17

*Evolutionary Intelligence, LLC v. Twitter, Inc.*,
    No. C 13-04207, 2014 U.S. Dist. LEXIS 28726 (N.D. Cal. Feb. 25, 2014)...........................14

*Evolutionary Intelligence LLC v. Yelp*,
    No. C-13-03587, 2013 U.S. Dist. LEXIS 178547 (N.D. Cal. Dec. 18, 2013 ...................17, 21

*Gen. Elec. Co. v. Vibrant Media, Inc.*,
    No. 1:12-cv-00526, 2013 U.S. Dist. LEXIS 173321 (D. Del. Dec. 4, 2013) ........................19

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983)..................................................................................13

*Honeywell Int'l, Inc. v. Furuno Elec. Co.*,
    No. 09-3691, 2010 U.S. Dist. LEXIS 83707 (D. Minn. July 30, 2010) ................................20

*MercExchange, LLC v. eBay, Inc.*,
    500 F. Supp. 2d 556 (E.D. Va. 2007) .........................................................................14

*Nat'l Oilwell Varco v. L.P. v. Omron Oilfield & Marine, Inc.*,
    No. A-12-CA-773-SS, 2013 U.S. Dist. LEXIS 167387 (W.D. Tex. June 10, 2013) ..............20

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
No. 12-1744, 2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013) .......................................18

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
No. 5:13-CV-01356, 2014 U.S. Dist. LEXIS 4095 (N.D. Cal. Jan. 13, 2014).......................12

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
No. C-12-4958, 2013 U.S. Dist. LEXIS 118723 (N.D. Cal. Aug. 16, 2013) .............13, 18, 19

*Pi-Net International, Inc. v. Hertz Corp.*,
No. CV 12-10012, 2013 U.S. Dist. LEXIS 81570 (C.D. Cal. June 5, 2013) .........................15

*Pragmatus AV, LLC v. Facebook, Inc.*,
No. 11-cv-02168, 2011 U.S. Dist. LEXIS 117147 (N.D. Cal. Oct. 11, 2011) ......................21

*Southeastern Metals Mfg. Co. v. Millennium Metals, Inc.*,
No. 3:11-cv-1058, 2012 U.S. Dist. LEXIS 39356 (M.D. Fla. Mar. 21, 2012) ......................20

*Star Envirotech v. Redline Detection, LLC*,
No. SACV 12-01861, 2013 U.S. Dist. LEXIS 58866 (C.D. Cal. Apr. 3, 2013)....................19

*Synopsys, Inc. v. Mentor Graphics Corp.*,
IPR2012-00042 (P.T.A.B., Feb. 19, 2014) ..........................................................................18

*Tierravision, Inc. v. Google, Inc.*,
No. 11cv2170, 2012 U.S. Dist. LEXIS 21463 (S.D. Cal. Feb. 21, 2012) ..............................15

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013) ................................................................................12

**STATUTES**

37 C.F.R. § 42.100 *et seq.*......................................................................................................10, 20

35 U.S.C. § 141(c) .........................................................................................................................13

35 U.S.C. §§ 311-19 ............................................................................................................. passim

35 U.S.C. §§ 312-13 (2010) (amended 2011)................................................................................19

**OTHER AUTHORITIES**

77 Fed. Reg. 48680 (Aug. 14, 2012)........................................................................................12, 19

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT

iii

CASE NO. 3:14-CV-01575-EMC

## NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 19, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Edward M. Chen at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Cardiocom, LLC ("Cardiocom") respectfully requests this Court to hear Cardiocom's motion to stay this lawsuit pending the resolution of the *inter partes* review (IPR) and reexamination proceedings requested by Cardiocom regarding all six patents-in-suit.

Cardiocom requests that the Court stay this proceeding pending the decisions in *inter partes* review ("IPR") and reexamination proceedings related to all of the claims in this suit.  IPRs covering four of the six patents-in-suit already have been instituted and are expected to be decided no later than January 28, 2015.  IPRs and reexaminations covering all other claims are pending institution. Further, this case is in its early stages: discovery is in its infancy, this Court has not held its Initial Case Management Conference, and no trial date or hearing date regarding claim construction has been set.  A stay pending IPR and reexamination of the patents-in-suit will not unduly prejudice Plaintiff, but rather will narrow the issues, conserve the Court's resources, and allow the parties to avoid needless attorney's fees and expenses that would be incurred in litigating claims amended or canceled during the IPRs and reexaminations.

This motion is based on this Notice of Motion and Motion, the following points and authorities, the Declaration of William Schultz ("Schultz Decl."), filed herewith, the record in this action, and such further evidence and argument that the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO STAY**

## I.    INTRODUCTION

This matter is a follow-on six patent infringement lawsuit that Plaintiff Bosch filed against Defendant Cardiocom, accusing Cardiocon's Telehealth system of infringement.  A prior patent case (5:12-cv-03864-EJD (hereinafter "the First Case")) also involving six patents and the same Cardiocom product line was stayed after Cardiocom filed reexamination proceedings before the U.S. Patent Office.  (See Case No. 5:12-cv-03864, Dkt. # 43 (Order granting motion for stay).)  Between the two cases, all twelve patents name the same inventor. Bosch asserts ten of the twelve patents share a common priority date, meaning they are in the same patent family.  Many of the patents in both actions share identical specifications as well as nearly identical patent claims.

Bosch filed the First Case in July 2012 in the Northern District of California, where Bosch resides.  Judge Edward Davila stayed the First Case in December 2012 after Cardiocom filed reexamination requests on all six patents.  Five months later, on April 26, 2013, Bosch filed its follow-on case against Cardiocom, a Minnesota Corporation, 1,800 miles away in the Eastern District of Texas to avoid the California stay.  Cardiocom immediately filed a venue motion to send the case back to California.  On March 10, 2014, the Texas court granted Cardiocom's motion.  In an effort to disrupt what should have been a smooth transition, Bosch has filed a number of dilatory motions.  Bosch's actions have prompted Cardiocom to file the instant motion to stay Bosch's follow-on case.

This case presents even more compelling grounds for a stay than the First Case.  While Cardiocom only asserted reexamination requests in the First Case, the present case involves the PTO's Inter Partes Review (IPR) proceedings, which provide a new, expedited review process that was part of the recent patent reform in the America Invents Act.  As Bosch has admitted, IPRs reach finality much faster than reexaminations, and thus likely shorten the length of a stay.  Moreover, the specialized Patent Trial and Appeal Board (PTAB), which is responsible for deciding petitions for IPR and presiding over the IPRs themselves, requires a stronger showing of invalidity to even

institute IPRs than the PTO requires to institute  reexaminations.  The Board's decision to institute

IPRs on four of the patents-in-suit thus means it is likely that the claims subject to those petitions

will be invalidated by January 2015, when the Board is statutorily required to make its decisions.

The other, pending requests are likely to lead to a similar outcome in the following months.  Thus, it

is likely that the IPR and reexaminations will result in cancelation of most or virtually all of the

claims of the asserted patents.  The Court will benefit, moreover, from extensive claim construction

and other analysis by the Board in its decisions.  The IPR and reexamination proceedings will

greatly narrow the issues and streamline the case for the Court, should any of Bosch's claims survive

these proceedings.

      A stay is appropriate because this case is in its early stages.  The initial case management

conference in this Court will not occur until July 10, 2014.  No trial date has been set.  No dates have

been set for briefing or a hearing on claim construction.  Discovery opened Jan 17, 2014 in Texas,

52 days before the transfer motion was granted.  A stay may render the case moot; at the very least

the issues will be greatly narrowed and the proceedings streamlined.

      If the case is not stayed, in contrast, the parties and the Court will waste time and resources

considering claim construction and validity issues in parallel with the Board decisions, and will

likely waste time litigating claims that are invalidated or are not asserted because they are narrowed

as a result of claim amendments made during IPR.  A stay will not unduly prejudice Bosch or

provide Cardiocom a tactical advantage.  All the patents asserted in the present case existed when

Bosch first sued Cardiocom in this District asserting a first wave of six patents against Cardiocom's

telehealth products and services. Bosch, however, chose not to assert them in the First Case.

Bosch's choice to delay asserting the patents-in-suit shows there is no prejudice with a stay.

Moreover, Bosch has offered to widely license its patent portfolio rather than attempt to maintain

market exclusivity.  Thus, a monetary award for past damages would adequately compensate Bosch

should there be any finding of infringement.  Indeed, Judge Davila already found lack of prejudice

when granting the stay in the First Case based on Bosch's licensing of a patent portfolio that

includes the same group of six patents asserted here, and Bosch did not appeal that finding.  That

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS- IN-SUIT

3

CASE NO. 3:14-CV-01575-EMC

adjudicated fact, coupled with the years of delay to assert the patents here, show there is no prejudice.  A stay is appropriate.

## II.  FACTS

### A.  Bosch has sought to license the patents in suit to Cardiocom and others since at least 2006; it does not use this patent portfolio to maintain any market exclusivity.

On September 13, 2006, Health Hero Network, Inc. ("Health Hero") the predecessor-in-interest of Plaintiff Bosch, wrote to Cardiocom concerning several issued patents and their related pending applications from the same family. (October 5, 2012 Declaration of Dan Cosentino ("Cosentino Decl.") ¶ 2; Ex. A.)[1] The patents-in-suit all claim priority to applications pending at the time of this correspondence, and presumably were within the scope of the license Health Hero proposed.  Health Hero requested a meeting to discuss a license.

Most of the patents in suit arise from the same original provisional applications dated March 28, 1997, as many of the patents subject to "preliminary claim maps" (e.g., a document used by patent holders to try to show a "mapping" of the claims to an accused product or service)  in the enclosure with Health Hero's letter.  (Cosentino Ex. A at slide 14 (Pat. No. 6368273); slides 16-19 (Pat. No. 6968375).)  The features claimed by the patents identified as "sample" patents in the letter and accompanying slides relate to features including script programs and group overview charts for patients—some of the same features at issue in the patents-in-suit.  (*Id.* slides 14-19 (script programs, script program generators), 23-26 (group overview charts).)

Cardiocom responded by letter dated January 24, 2007 denying that the patents covered any of Cardiocom's products and therefore declining any interest in a license. (Cosentino Decl. ¶ 3; Ex. B.) Health Hero did not pursue the discussions further with Cardiocom.

Bosch Healthcare announced it was acquiring most shares of Health Hero in late 2007. (Schultz Decl. ¶ 3; Ex. 2.)  Health Hero apparently merged into Bosch Healthcare in 2011, although

---

[1]   The Declaration of Dan Cosentino was filed as part of the First Case.  The declaration and relevant exhibits are set forth as Exhibit 1 in the Declaration of William Schultz ("Schultz Decl.").

no public recordation of this for the patents in suit occurred until Dec. 2013.  (Schultz Decl. ¶ 3; Ex. 2 (PTO assignment records).)  Health Hero/Bosch Healthcare continued to remain silent. Meanwhile, as part of its marketing efforts, Cardiocom regularly appeared at trade shows since the year 2001. At these trade shows, Cardiocom has prominently displayed its products and advertised its services. Bosch is and was a regular exhibitor and/or attendee at the same trade shows, as was its predecessor Health Hero. (Cosentino Decl. ¶ 5.)  Thus, the present suit was filed more than five years after the letter exchange and Cardiocom's continuing presence in the marketplace. (Cosentino Decl. ¶ 4.)

Bosch has agreed to license its patents, as well as patent applications, and any subsequent continuations, continuations-in-part, or divisionals to others. In October 2012, Bosch issued a press release touting a license to a competitor, Waldo Health.  (Declaration of Christopher Davis In Support Of Reply Motion ¶ 2; Ex. L.)[2]  The release says the license applies to "Bosch's extensive telehealth portfolio" and says "[i]n 2011, Bosch Healthcare initiated an active technology licensing program." (*Id.*)  The license apparently was entered as part of a settlement of litigation.  In January, 2012, Bosch filed suit in the Northern District of California against three other telehealth system providers, Waldo Networks, Inc., Express MD Solutions, Inc., and MedApps, Inc. (Declaration of Christopher Davis In Support Of Motion ¶ 16.)[3] The case against Waldo Networks was dismissed and the remaining two cases are ongoing, though are stayed pending the reexaminations Cardiocom filed in the First Case. (*Id.* ¶ 17.)

In 2007, Health Hero sued two other telehealth system providers, Alere Medical, Inc. and Patient Care Technologies, Inc. for patent infringement concerning several patents. (*Id.* ¶ 12.) Another company, Draupnir, LLC, filed a declaratory judgment action against Health Hero in 2007. (*Id.*)  In the *Alere Medical* case, Health Hero consented to a stay of the litigation pending

---

[2]    The Declaration of Christopher Davis In Support Of Reply Motion was filed as part of the First Case.  The declaration and relevant exhibit are set forth as Exhibit 4 in the Schultz Decl.

[3]    The Declaration of Christopher Davis In Support Of Motion was filed as part of the First Case. The declaration and relevant exhibit are set forth as Exhibit 5 in the Schultz Decl.

reexamination. (*Id.* ¶13; Ex. K.)  Each of those 2007 cases was eventually dismissed.  The dismissal of *Patient Care Technologies* case specifically referenced a settlement between the parties. (*Id.* ¶ 15.) Bosch initially named Abbott Diabetes Care, Inc. as a defendant in this case because it was an exclusive field of use licensee to the asserted patents.  Bosch has since dismissed Abbott, contending Abbott is no longer an exclusive licensee.  (Schultz Decl. ¶ 7; Ex. 6 (1/6/2014 Letter).)

Bosch has never litigated one of the patents to a resolution in court.  Other, related telehealth patents have been tested at the PTO to finality based on earlier reexamination challenges, with the result of invalidation.  (*See, e.g.*, Schultz Decl. ¶ 8; Ex. 7 (reexamination certificate cancelling claims of U.S. Pat. No. 7,233,236).)  Bosch's willingness to license its portfolio of telehealth patents and applications demonstrates that Bosch does not seek exclusivity in the marketplace and does not have exclusivity, but rather prefers receiving royalties as compensation.

**B.      Bosch filed this case in Texas in an attempt to avoid another stay; the case remains in its early stages.**

**1.      The Northern California Court stayed Bosch's first suit against Cardiocom pending the outcome of reexaminations.**

More than five years after Health Hero attempted to license the patent portfolio, on July 24, 2012, Bosch sued Cardiocom for alleged infringement of six patents as part the First Case.[4] Although all of the patents in the second suit had issued by the time the First Case was filed, Bosch did not assert those patents against Cardiocom in that case.

Cardiocom denied infringement and alleged invalidity and other defenses in its August 27, 2012 Answer and Counterclaims in the First Case.  By September 2012, Cardiocom filed petitions to reexamine the patents in that case. Of the 257 claims that were subject to *inter partes* reexamination, all 257 currently stand rejected, and Bosch has begun to appeal these decisions as they become final. The PTO recently issued a reexamination certificate allowing the claims of the sixth patent, Patent No. 6,368,273, which was subject to *ex parte* reexamination.

---

[4]      The First Case (5:12-cv-03864-EJD) alleged infringement of U.S. Patent Numbers 6,968,375; 7,252,636; 7,841,327; 8,015,025; 8,140,663; and 6,368,273.

On October 5, 2012, Cardiocom moved to stay the First Case pending the reexaminations filed with the PTO.  (Case No. 5:12-cv-03864, Dkt. No. 19.)  That Court granted the motion on December 3, 2012, and stayed the case pending the reexaminations.  (Case No. 5:12-cv-03864, Dkt. No. 43.)  The Court found that "[s]tatistically these claims have a greater chance of being canceled or amended than they do of being confirmed."  (*Id.* at 3.)  Based on the "likelihood that the scope of Plaintiff's claims will be altered or even cancelled" the Court held the issues "stand to be clarified by a stay" and that "the court would greatly benefit from the PTO's guidance as to the scope of the claims."  (*Id.* at 3-4.)  The Court thus saw benefits from the stay whether or not any claims survived the process.

That Court also found that Bosch was unlikely to be prejudiced for several reasons. Applicable to this case, the Court held that Bosch licensed its patents to several other competitors, and offered a license to Cardiocom.  (*Id.* at 5.)  The Court held "[t]hrough its licensing efforts, Plaintiff has enabled other companies to directly compete in its own market, thus creating competition for relationships, opportunities, and market share."  (*Id.*)  The Court found, "[g]iven that Plaintiff has not used the patents-in-suit to keep competitors out of the market, it cannot now argue that it will suffer an unfair disadvantage by Defendant's ongoing competition during any stay period."  (*Id.*)  As a result, the Court found that monetary damages "will adequately compensate Plaintiff for any lost licensing revenues" should infringement be found.  (*Id.*)

The Court also held Bosch's strategic decision of when to bring the lawsuit "does not create the undue prejudice necessary to shield it from the potential negative consequences of Defendant's strategic response."  (*Id.* at 5-6.)  Bosch's five-year delay in suing Cardiocom undermined any argument that it was imperative that the case be resolved as quickly as possible.  The Court also found that Bosch would not be tactically disadvantaged by a stay because Bosch "has essentially constructed the environment that created any disadvantage it stands to suffer."  (*Id.* at 6.)

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS- IN-SUIT

7

CASE NO. 3:14-CV-01575-EMC

1    **2.    In response to the stay of the First Case, Bosch brought this case in a distant and inconvenient forum alleging infringement of patents it could have asserted in the First Case.**

2

3

4    Over five months after the First Case was stayed, on April 26, 2013, Bosch filed this case.

5    Although Bosch filed the First Case in its home district, the Northern District of California, against

6    Cardiocom, a Minnesota-based company, it chose to file the second case in the Eastern District of

7    Texas. Bosch has yet to explain why it did not assert the patents in the second case as part of the

8    First Case, as all six patents had issued by the time it brought the First Case.

9    Before answering Bosch's complaint, Cardiocom promptly filed a motion to transfer the case

10   from Texas to this Court. The Texas court did not immediately schedule a case management

11   conference after Cardiocom moved to transfer. As the Texas court found when it transferred the

12   case in March:

13   > The issues in this case substantially overlap with the issues in suit in the first-filed California case. All twelve of the patents-in-suit in both California and Texas share an inventor and all
14   > relate to remote monitoring of patient health. The patents in both cases share specification language, prior art references, drawings, and priority claims. Four of the patents in this suit
15   > share a portion of their file history with patents in the California suit, and the Patent and Trademark Office suggested that some of the patents-in-suit in this case were not patentably
16   > distinct from some of the patents in the California case. This suit accuses many of the same products as the California suit.

17   (Case No. 5:12-cv-03864, Dkt. No. 51 at 2.) The Court further found transfer warranted "even if the

18   Court considers the convenience factors typically at issue in a motion to transfer under 28 U.S.C.

19   §1404(a)" and found the Northern District of California "the most convenient venue for this case."

20   (*Id.*) Bosch's gambit for forum-shopping for a stay-adverse venue thus failed.

21

22   In July 2013, while Cardiocom's motion to transfer was pending, Cardiocom petitioned the

23   Board to institute IPR proceedings to review the validity of all six patents asserted by Bosch in the

24   second case. (Schultz Decl. ¶ 11.)

25

26

27

28

### 3.    Little activity has occurred on the merits of the case.

The Texas Court did little with the case while the venue motion was pending.  The Texas Court did not hold a status conference for setting trial and other dates until January 3, 2014.  On March 10, 2014, just over two months later, the Texas Court granted Cardiocom's motion to transfer the case.  (Dkt. No. 51.)

In Texas, Bosch was required to file preliminary infringement contentions pursuant to local rules involving initial disclosures in mid-December 2013.  Cardiocom filed initial invalidity contentions on February 14, 2014.  After the transfer of the case, on April 4, 2014, this Court issued an Order Setting Initial Case Management Conference and ADR Deadlines.  (Dkt. No. 53.)  This Court has not set a trial date or a hearing date for claim construction.  Rather, the Court scheduled an initial case management conference for July 10, 2014, and instructed the parties to meet and confer prior to June 19, 2014 to discuss certain issues.  (*Id.*)  The parties have not yet met and conferred to address these issues in the Court's order.  The status of discovery and claim construction proceedings also demonstrates that it is still early in this case:

- **The parties have just begun fact discovery:** While the case was in Texas, neither party took depositions or conducted any discovery.  This Court has not set discovery deadlines.

- **The parties have not submitted claim construction briefs:** While the case was in Texas, neither party filed a brief relating to claim construction.  This Court has not set deadlines for claim construction briefing and related actions.  Given the difference between the local rules in this District and the Eastern District of Texas,[5] the parties must still make additional disclosures prior to such briefing.

- **Neither party has filed a dispositive motion in either Texas or this Court**

- **The parties have not engaged in any ADR proceedings in Texas or in this Court**

---

[5]    The parties exchanged proposed claim terms and preliminary claim constructions under Texas rules, which require less information than California rules.  (*See* Schultz Decl. ¶ 10; Exs. 9-11.) By way of example, the California rules require that each party "identify all references from the specification or prosecution history that support its proposed construction."  (*Id.* ¶ 10; Ex. 11 at 4-2(b).)  The California Rules also require "listing of any [expert] opinions to be rendered in connection with claim construction."  (*Id.*)  The Texas rules do not have those requirements, and thus, the parties have not made these exchanges.  (*Id.* ¶ 10; Exs. 9-11.)

C.   **Five of Cardiocom's Petitions for IPR regarding four of the Patents in Suit have been granted; the claims not subject to granted IPRs are subject to other pending PTO proceedings.**

Within three months of Bosch filing the present Complaint against Cardiocom, Cardiocom filed petitions for IPR against each asserted claim of the patents in suit pursuant to 35 U.S.C. §§ 311-19 and 37 C.F.R. § 42.100 *et seq.*  (Schultz Decl. ¶ 11.)  Bosch opposed Cardiocom's petitions in October 2013.  In January 2014, the Board issued decisions granting five of Cardiocom's petitions and instituting IPRs for all claims of U.S. Patent No. 7,516,192 (the '192 Patent); claims 1, 2, 5-10 of U.S. Patent No. 7,587,469[6] (the '469 Patent); all claims of U.S. Patent No. 7,840,420 (the '420 Patent); and all claims of U.S. Patent No. 7,921,186 (the '186 Patent). The Board determined that Cardiocom established a reasonable likelihood of establishing on multiple separate grounds that the claims subject to the IPRs are unpatentable.  (Schultz Decl. ¶ 14; Exs. 12-16.)  The Board also issued Scheduling Orders.  Oral argument on the four instituted IPRs is scheduled to occur September 14, 2014.  The Board is under a statutory requirement to issue final determinations in the pending IPRs by January 28, 2015.  35 U.S.C. § 316(a)(11).[7]

Cardiocom's petitions to institute IPRs of the '605 and '249 patents were denied.  Medtronic, which acquired Cardiocom after Cardiocom filed the first set of IPR requests, filed its own petition for IPR against the '605 patent on March 6, 2014, that cited different prior art which shows the "processing unit" (a computer) having the requisite functionality in conjunction with the other claim elements and corrects the minor alleged deficiency with the prior petition.  With respect to the '249

---

[6]   On February 14, 2014, Medtronic (now Cardiocom's parent company) filed a petition for follow-up IPR and motion for joinder for all remaining claims asserted on the '469 Patent.  (Schultz Decl. ¶ 12.)

[7]   Medtronic and Cardiocom have also filed petitions for *ex parte* reexamination of the '605 and '469 Patents on grounds that cannot be asserted in IPR proceedings.  (Schultz Decl. ¶ 13.)  These reexaminations provide an additional likelihood that the claims of these patents will be found invalid.

Patent, Medtronic filed two petitions for IPR on April 10, 2014 and April 25, 2014 to address all of the claims in the '249 Patent with art that specifically disclosed the element the PTAB found lacking, addressing the deficiencies found by the Board in the decisions that denied the prior IPR requests.  Medtronic's filings were less than one year after Cardiocom was served with the suit and thus were within the statutory deadline for real parties in interest.  35 U.S.C. §315(b).

Every claim of the patents-in-suit is thus now subject to an instituted IPR proceeding or a pending request for IPR.  The IPR process will likely moot all or part of the case.  There will be no need for fact discovery, expert discovery, claim construction, or trial of any claim found invalid.

The IPRs will simplify and streamline the case regardless of whether all claims in all six patents are ultimately invalidated by the Board.  Even for claims not canceled, the Court will benefit from the Board's analysis of the claim scope – for example, features which distinguish the prior art may well distinguish Cardiocom's accused products as well for infringement purposes.  Moreover, should Bosch amend any claims, any claim construction done in the case as to the pre-amendment claims would be irrelevant and new claim construction and discovery would likely need to be redone for the newly amended claims.  Proceeding without a stay will prejudice Cardiocom and result in much wasted effort in pretrial proceedings based on the likely event some or all of the claims are found invalid.  A stay will ensure that the Court and the parties do not expend the considerable resources needed for patent cases, litigating issues that will be narrowed or mooted by, if not completely resolved in, the pending IPRs.

## III.   ARGUMENT

### A.   This case provides an even more compelling case for a stay than the First Case, which already has been stayed.

The First Case Bosch brought against Cardiocom has already been stayed.  That case only involves reexaminations.  As Bosch acknowledged when it opposed the first stay, reexaminations

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS- IN-SUIT

11

CASE NO. 3:14-CV-01575-EMC

can take "approximately three years to complete and any resulting appeals will delay resolution even longer." (Case No. 5:12-cv-03864, Dkt. No. 23 at 4.)  In contrast, as Bosch also noted, IPRs have to be decided much quicker, in just twelve months after IPRs are instituted.  (*Id.*)  Moreover, whereas reexaminations may be appealed twice—once to the Board, then to the Federal Circuit—IPRs are Board decisions that are appealed directly to the Federal Circuit.  35 U.S.C. § 141(c).  Thus, IPRs are much quicker as Bosch acknowledges—and provide an even more compelling basis for a stay, as the stay is likely to be shorter.

Consistent with Bosch's statements, the nature and speed of the new IPR process shows that it is conducive to stays of litigation—indeed it was intended to transfer much of the burden regarding invalidity determinations from the courts to the Board.  *Capriola Corp. v. LaRose Indus., LLC,* No. 8:12-cv-2346, 2013 U.S. Dist. LEXIS 65754, at *1, 6-7 (M.D. Fl. Mar. 11, 2013) (granting a stay, in part, because an issue important to the litigation—invalidity—fell within the PTO's particular expertise). The IPR proceeding replaces the old *inter partes* reexamination ("reexamination") proceeding. "The purpose of this reform was to 'convert [ ] inter partes reexamination from an examinational to an adjudicative proceeding.'" *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013 (quoting H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)).  Further, Congress sought "'to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs'" and "'to create a timely, cost-effective alternative to litigation.'" *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356, 2014 U.S. Dist. LEXIS 4095, at *9-10 (N.D. Cal. Jan. 13, 2014) (quoting 77 Fed. Reg. 48680-01)); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1029 (C.D. Cal. 2013) (same).  To initiate an IPR, the Board must find "that the information presented in the petition filed . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C.  § 314(a).  By

contrast, the old reexamination proceeding required a showing of a "substantial new question of patentability," a lower standard. The Board has three months from the date the patent holder files a response, or the date that the response was due if no response is filed, to decide whether to institute the IPR. *Id*. at § 314(b). The America Invents Act (AIA), which created IPR proceedings, requires a final determination by the Board in an IPR proceeding within one year of that decision, which may be extended up to six months based upon a showing of good cause. *Id.* § 316(a)(11). "For comparison, the old reexamination proceeding averaged over thirty-seven months in the second quarter of fiscal year 2013." *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. C-12-4958, 2013 U.S. Dist. LEXIS 118723, at *10 (N.D. Cal. Aug. 16, 2013).

Other facts support a stay here even more strongly. Bosch chose to delay even longer to assert the patents in this suit—all of which were issued and in force when the First Case was filed. This means that any alleged prejudice due to a stay of these patents is even lower than in the First Case. Moreover, any delay was caused by Bosch. Bosch must have known that its forum-shopping gambit would create a significant risk of a successful transfer motion. Thus, Bosch's own actions show that delay in the enforcement of these patents is not a concern.

### B. Stays are favored in cases like this where they are likely to narrow issues without unduly prejudicing the parties.

District courts have inherent and discretionary power to stay litigation pending PTO invalidity proceedings. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). This inherent power to stay a case pending the PTO's review of a patent "*resides with the Court* to prevent costly pretrial maneuvering which attempts to *circumvent* the reexamination procedure." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980) (emphasis in original)). A court may grant a motion to stay "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to

avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination." *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007).

This District also recognizes that "[t]here is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.'" *Evolutionary Intelligence, LLC v. Twitter, Inc.*, No. C 13-04207, 2014 U.S. Dist. LEXIS 28726, at *4 (N.D. Cal. Feb. 25, 2014) (quoting *ASCII Corp. v. STD Entm't*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)).

A stay should be granted where: (1) the case is in the early stages of litigation and discovery is not complete; (2) a stay will simplify the issues and streamline the trial; and (3) a stay will not unduly prejudice or tactically disadvantage the non-moving party. *Brixham Sol. Ltd. v. Juniper Networks, Inc.*, No. 13-cv-00616, 2014 U.S. Dist. LEXIS 58770, at * 3, 5 (N.D. Cal., Apr. 28, 2014) (granting motion to stay pending IPR although parties had submitted claim construction briefs and some written and document discovery had been conducted); *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 U.S. Dist. LEXIS 26382, at *8 (N.D. Cal. Feb. 28, 2014) (granting motion to stay pending IPR after transfer from Eastern District of Texas and after order denying relation of cases); *Evolutionary Intelligence, LLC v. Facebook, Inc*., Nos. C 13-4202 SI, C 13-4204 SI, 2014 U.S. Dist. LEXIS 9149, at *4 (N.D. Cal. Jan. 12, 2014) (staying case even where petition for *inter partes* review did not challenge all of the asserted claims).

Staying this case pending the outcome of the IPRs and reexaminations is warranted because this case is in its early stages, a stay will render moot or at least streamline the proceedings, and there is not undue prejudice or clear tactical disadvantage to Bosch.

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT

14

CASE NO. 3:14-CV-01575-EMC

1

### 1.    The case is in its early stages, favoring a stay.

Courts have repeatedly found that when litigation is in its early stages, a stay is strongly

supported pending an IPR because of the reduced burden on the parties and the Court.  In *Pi-Net*

*International, Inc. v. Hertz Corp.*, the Court noted that where (as here) the parties had exchanged

infringement contentions and engaged in some initial discovery, this factor favored a stay pending

IPR "because 'considering the general time line of patent litigation, there is more work ahead of the

parties and the Court than behind the parties and the Court.'" No. CV 12-10012, 2013 U.S. Dist.

LEXIS 81570, at *5-7 (C.D. Cal. June 5, 2013) (quoting *Semiconductor Energy Lab. Co. v. Chimei*

*Innolux Corp.*, No. SACV 12-21-JST, 2012 U.S. Dist. LEXIS 186322, at *5 (C.D. Cal. Dec. 19,

2012)).

Stays are often granted even in cases that have progressed as far as or farther than this one.

For example, in *Click-to-Call Techs. LP v. Oracle Corp.*, the court granted a stay after the trial date

was set, noting that because the Board determines a reasonable likelihood of success exists when

instituting an IPR, "[p]roceeding to trial could therefore prove to be extraordinarily wasteful of both

the parties' resources and the Court's resources."  No. A-12-CA-468-SS, slip op. at 3 (W.D. Tex.

Nov. 25, 2013) (attached to the Schultz Decl. ¶ 16; Ex. 21 at 3.).  Here, in contrast, no trial date has

been set.  In *Brixham*, the court granted a stay pending IPR where some written and document

discovery had been conducted and the parties had submitted claim construction briefs.  2014 U.S.

Dist. LEXIS 58770, at *5-7.  Here, no claim construction briefs have been filed.  Similarly, the

*Evolutionary Intelligence, LLC v. Sprint Nextel Corporation* court granted a stay pending IPR

despite the exchange of initial disclosures, service of infringement and invalidity contentions, and

some discovery. 2014 U.S. Dist. LEXIS 26382, at *9-10; *see also Tierravision, Inc. v. Google, Inc.*,

No. 11cv2170, 2012 U.S. Dist. LEXIS 21463, at *5-6 (S.D. Cal. Feb. 21, 2012) (granting stay where

claim construction briefs were soon due and parties had exchanged proposed claim constructions and extrinsic evidence).

This litigation is in its early stages. The case was transferred to this Court on April 4, 2014. On that day, the Court issued an Order Setting Initial Case Management Conference for July 10, 2014 and ADR Deadlines. (Dkt. No. 53.) No trial date is set. No claim construction dates have been set. Rather, the Court instructed the parties to meet and confer prior to June 19, 2014. The parties have not yet met.

Moreover, the proceedings prior to the transfer of this case to this Court also show that a stay is appropriate. The one and only hearing the parties had before the Texas court was a short January 3, 2014 initial conference. The Texas Court granted Cardiocom's motion for transfer on March 10, 2014, less than two months later. While the parties exchanged some written discovery, no depositions have been noticed, and, as explained above, written discovery is far from complete.

The Court has not construed the claims or set a claim construction hearing. Further, the parties have only begun the preliminary exchange of terms and proposed interpretations.[8] Underscoring why a stay is appropriate, many of the claims and claim elements that are likely to be at issue in this litigation are presently being analyzed by the PTAB. Indeed, because Bosch is able to amend and propose definitions of its claims as part of the ongoing IPR proceedings, the entire landscape of the asserted claims, and claim elements for which construction may be required, are likely to change. Indeed, no construction may be required for some or all of the claims for patents that do not survive the PTAB's review.

The parties are not yet done with written discovery, have not served any deposition notices, have not completed claim construction, have not taken expert discovery, and have not engaged in

---

[8]  The case was transferred prior to the submission of the joint claim construction statement and the Court has not yet set a schedule for claim construction.

dispositive motion practice. Accordingly, "there is more work ahead of the parties and the Court than behind the parties and the Court," and a stay will lessen the burden of litigation.

A stay will save the Court and the parties from expending considerable resources engaging in discovery, claim construction proceedings and even a trial that ultimately will be rendered moot or significantly limited. A stay will lessen the burden of litigation. The stage of this litigation strongly favors staying the case pending the IPRs and reexaminations related to the patents-in-suit.

### 2. The Board's likely cancellation of most or all of Bosch's asserted claims makes this case a particularly good candidate for a stay.

A stay will simplify the issues in this case because Cardiocom has shown a reasonable likelihood of prevailing on its invalidity arguments. Cardiocom need only show "it is likely that the IPR will simplify the case" to weigh in favor of a stay, not that it "will likely eliminate the need for litigation entirely." *Sprint Nextel Corp.*, 2014 U.S. Dist. LEXIS 26382, at *12. "Should the PTAB cancel or narrow *any* of the asserted claims of the Asserted Patents, the scope of this litigation may be significantly simplified." *Evolutionary Intelligence LLC v. Yelp*, No. C-13-03587, 2013 U.S. Dist. LEXIS 178547, at *16-17 (N.D. Cal. Dec. 18, 2013) ("[A] stay is not contingent upon the reexamination proceeding resolving every claim and issue in this action." (quoting *Internet Patents Corp. v. eBags, Inc.*, No. C 12-03385 SBA, 2013 U.S. Dist. LEXIS 122868, at *10 (N.D. Cal. Aug. 28, 2013)) (emphasis in the origina)). Indeed, even if the Board affirms the claims, the mere grant of IPR can streamline the case. *Facebook*, 2014 U.S. Dist. LEXIS 9149, at *8-9.

Further, "the vast majority of requests for *inter partes* review are accepted and in virtually all of the cases in which final written decisions have been issued, the PTO has cancelled some or all of the challenged claims." *Brixham*, 2014 U.S. Dist. LEXIS 58770, at *3-4. The higher standard to institute an IPR shows that the issues in this case are likely to be simplified by the IPR process. Whereas the previous *inter partes* reexamination standards required only "a substantial new question

of patentability affecting any claim of the patent concerned" to be granted, an IPR petition can only

be granted where the Board determines that "there is a reasonable likelihood that the petitioner

would prevail with respect to at least 1 of the claims challenged in the petition." *Compare* 35 U.S.C.

§ 314(a) *with* 35 U.S.C. §§ 312-13 (2010) (amended 2011).  Courts have recognized the grant of an

IPR reflects a higher likelihood that at least one or more of the asserted patent claims will be

cancelled or amended, thus obviating or limiting issues in the litigation.  *See Neste Oil Oyj v.*

*Dynamic Fuels, LLC*, No. 12-1744, 2013 U.S. Dist. LEXIS 92416, at *14 (D. Del. July 2, 2013);

*Focus Bus. Bank*, 2013 U.S. Dist. LEXIS 118723 at *13-14 ("the higher standard for instituting an

IPR . . . gives some promise that at least certain challenged claims will be struck down or amended if

the PTO grants the petitions.").

      The Board's institution of IPR for nearly all claims of four patents-in-suit, with petitions on

the other patents and claims pending, shows that the issues in this case are likely to be simplified by

the IPR process.  First, the Board's institution orders concluded that Cardiocom had shown a

reasonable likelihood of prevailing on showing that at least some of the claims of the patents in suit

are invalid.  Given the Board's Decisions, it is highly unlikely that all of the claims of the patents in

suit will survive.  Further, Medtronic filed petitions for IPR to address the small number of claim

limitations that the Board found missing from the prior art cited by Cardiocom, but which are

unquestionably disclosed in the supplemental art submitted by Medtronic.[9]  Every one of the claims

that is not part of an instituted IPR is now subject to a pending IPR petition. The new filings cite

different art which addresses the concerns the Board had with the prior filings, making it likely the

Board will institute those proceedings and invalidate the claims as well.  The specific facts of this

case favor a stay.

---

[9] Because Medtronic acquired Cardiocom after Cardiocom filed the initial IPR requests, the estoppel provision of 35 U.S.C. §315(e) does not preclude Medtronic from bringing its requests. *Synopsys, Inc. v. Mentor Graphics Corp.*, IPR2012-00042 (P.T.A.B., Feb. 19, 2014).

**3.      A stay of the case will not unduly prejudice or present a clear tactical disadvantage to Bosch.**

The time to complete the IPR process does not constitute undue prejudice or present a clear tactical disadvantage to Bosch.  Courts have recognized that the expedient nature of IPR, as compared to the prior procedure of *inter partes* reexamination, mitigates any potential prejudice to the patent holder.  *See Gen. Elec. Co. v. Vibrant Media, Inc.*, No. 1:12-cv-00526, 2013 U.S. Dist. LEXIS 173321, at *2-3 (D. Del. Dec. 4, 2013) (granting stay pending IPR and recognizing that the Board is required to address IPRs in a relatively short period of time); *Star Envirotech v. Redline Detection, LLC*, No. SACV 12-01861, 2013 U.S. Dist. LEXIS 58866, at *6-7 (C.D. Cal. Apr. 3, 2013) ("While it is true that any delay is prejudicial to a party filing a claim for patent infringement, the delay here is minimized, as the 'delay caused by the new IPR procedure is significantly less than the delay caused by the old procedure'. . . ."); *Focus Bus. Bank*, 2013 U.S. Dist. LEXIS 118723 at *15-16 ("Delays based on the length of the PTO's review standing alone do not amount to undue prejudice.") (emphasis omitted)).

The Board's Scheduling Orders show that Bosch will not be prejudiced by undue delay. (Schultz Decl. ¶ 15; Exs. 17-20.)  Oral argument, the final step of the IPR before a written decision, is set to occur for the four instituted IPR proceedings on September 9, 2014.  (*Id.*)  A final determination on each of the IPRs must be made no later than January 28, 2015 (one year after the last of the four reviews was instituted), with an additional six-month extension available only upon a showing of good cause.  35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).  The Board has stated, however, that extensions beyond the initial one-year period "are anticipated to be rare."  77 Fed. Reg. 48680, 48695-96 (Aug. 14, 2012).

The IPRs are scheduled to be complete before trial is likely to be scheduled in this case.  This minimal delay is not prejudicial to Bosch and presents no unfair tactical disadvantage.

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND
MOTION TO STAY LAWSUIT PENDING INTER PARTES
REVIEW AND REEXAMINATION OF PATENTS- IN-SUIT

19

CASE NO. 3:14-CV-01575-EMC

Cardiocom has minimized any potential prejudice to Bosch by waiting to file its motion to stay until after the Board issued a decision on Cardiocom's initial petitions and instituted IPR proceedings.  *Compare, e.g.*, *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. A-12-CA-773-SS, 2013 U.S. Dist. LEXIS 167387, at *4 (W.D. Tex. June 10, 2013) (noting a danger of prejudice to the plaintiff absent a *granted* IPR petition "because of the possibility no review will even occur").  Indeed, the benefits of a single IPR should be enough to mitigate prejudice even in cases involving multiple patents.  *See, e.g.*, *Honeywell Int'l, Inc. v. Furuno Elec. Co.*, No. 09-3691, 2010 U.S. Dist. LEXIS 83707, at *9 (D. Minn. July 30, 2010) (finding motion to stay timely when one of several requests for reexamination had been granted).  The fact that Cardiocom's motion comes after the Board granted four IPR petitions and initiated review of substantially all of the claims of those four patents-in-suit provides substantial clarity with respect to initiation and scope of IPR and strongly weighs against a finding of undue prejudice.

Moreover, during the short time between the grant of these IPR requests and now, much has happened that further demonstrates a stay is appropriate.  New IPR requests have been filed against those claims not subject to the initial wave of IPRs that address the issues cited by the Board in denying the prior requests.  The case has been transferred and the Court has ordered the parties to discuss a discovery schedule and will meet with the Court to set a trial date.

Bosch also faces no prejudice with respect to remedies because it would maintain the same remedies as it has now—money damages.  *See Southeastern Metals Mfg. Co. v. Millennium Metals, Inc.*, No. 3:11-cv-1058, 2012 U.S. Dist. LEXIS 39356, at *5 (M.D. Fla. Mar. 21, 2012) (rejecting patent owner's claim of undue prejudice where, among other things, the plaintiff "fail[ed] to explain how any prejudice resulting from additional sales made during the stay cannot be remedied by monetary damages").  Bosch never sought a preliminary injunction against Cardiocom for any of the patents filed in the First Case or this second case.  And its extensive licensing history of its telehealth

portfolio shows that it opts to license for money, not seek exclusion of its competitors. As such, Bosch would not be prejudiced in this case because any additional sales made during the stay could be compensated by monetary damages. *See Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-cv-02168, 2011 U.S. Dist. LEXIS 117147, at *11 (N.D. Cal. Oct. 11, 2011) ("'Courts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement.'") (quoting *Implicit Networks Inc., v. Advanced Micro Devices, Inc.*, No. C 08-184 JLR, 2009 U.S. Dist. LEXIS 14467, at *10 (W.D. Wash. Feb. 9, 2009))).

Indeed, one of the reasons the Court stayed the First Case was Bosch's inability to demonstrate any prejudice resulting from a stay. The Court specifically held that: (i) "[t]hrough its licensing efforts, [Bosch] has enabled other companies to directly compete in its own market, thus creating competition for relationships, opportunities, and market share." (Case No. 5:12-cv-03864, Dkt. No. 43 at 5.); (ii) "Should infringement ultimately be found in this case, money damages will adequately compensate [Bosch] for any lost licensing revenues." (*Id.*); and (iii) "Bosch has constructed the environment that created any disadvantage it stands to suffer." (*Id.* at 6.) Nothing has changed in Bosch's favor regarding these findings—they still show Bosch will not be prejudiced.

A stay will also eliminate the prejudice of inconsistent rulings. *Yelp*, 2013 U.S. Dist. LEXIS 178547, at *18-19; *see Click-to-Call Techs. LP*, No. A-12-CA-468-SS, slip op. at 4 (attached to the Schultz Decl. ¶ 16; Ex. 21 at 4.) ("[I]t simply makes no sense for this Court to proceed in parallel with the PTAB. The finality of any judgment rendered by this Court will be dubious so long as the PTAB retains authority to review, and therefore invalidate, the asserted claims. This has consistently been the Court's position with regard to stays under the new American Invents Act procedures."). Because the Board found that Cardiocom established a reasonable likelihood of prevailing on its arguments that almost every claim of four patents-in-suit is invalid, a stay will

DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND MOTION TO STAY LAWSUIT PENDING INTER PARTES REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT

21

CASE NO. 3:14-CV-01575-EMC

minimize the risk of inconsistent rulings.  (Schultz Decl. ¶ 14; Exs. 12-16.)  Inconsistency will also be avoided regarding the additional IPR petitions still pending on the remaining claims.  This factor, like all other factors discussed above, also favors a stay.

## IV.     CONCLUSION

The Board held Cardiocom has shown a reasonable likelihood of success of prevailing on its contentions that the claims of four of the patents-in-suit are invalid.  The Board instituted *inter partes* review of almost all claims of four of the six patents-in-suit.  There is a definitive schedule and deadline for the prompt conclusion of the four instituted IPRs before trial in this Court.  The Board is reviewing IPR petitions on the remaining claims, which should be decided within months of the first group of decisions.  Moreover, this recently-transferred case has yet to have a case management conference, let alone a scheduled trial date.  A stay of these actions pending the conclusion of the IPR proceedings will either completely resolve the case or at least simplify it, will lessen the burden of litigation on the parties and the Court, and will not unduly prejudice or disadvantage Bosch.  For these reasons and as further described above, Cardiocom respectfully requests that the Court grant Cardiocom's motion to stay the litigation until the IPR proceedings are concluded.


Dated:  May 15, 2014                                   Respectfully submitted,

                                                                MERCHANT & GOULD P.C.

                                                                */s/ Daniel W. McDonald*
                                                                Daniel W. McDonald

                                                                Attorneys for Defendant and Counterclaimant
                                                                CARDIOCOM, LLC

**E-FILING ATTESTATION**

I, Timothy G. Majors, am the ECF User whose ID and password are being used to file **DEFENDANT CARDIOCOM'S NOTICE OF MOTION AND MOTION TO STAY LAWSUIT PENDING INTER PARTES REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT**.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Daniel W. McDonald, signer, has concurred in this filing.

Date: May 15, 2014                              _/s/ Timothy G. Majors_____
                                                         Timothy G. Majors

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2014, a true and correct copy of the foregoing document is being filed electronically with the Clerk of the United States District Court for the Northern District of California by using the CM/ECF system, which will send notice of such filing to all counsel of record.

Date:  May 15, 2014                             _/s/ Timothy G. Majors_____
                                                         Timothy G. Majors