Adam R. Alper (S.B.N. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
aalper@kirkland.com

Timothy G. Majors (S.B.N. 228275)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
tim.majors@kirkland.com

Daniel W. McDonald (*Admitted Pro Hac Vice*)
dmcdonald@merchantgould.com
William D. Schultz (*Admitted Pro Hac Vice*)
wschultz@merchantgould.com
Eric R. Chad (*Admitted Pro Hac Vice*)
echad@merchantgould.com
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2215
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Attorneys for Defendant CARDIOCOM LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT BOSCH HEALTHCARE SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CARDIOCOM, LLC,<br><br>Defendant. | Case No.    3:14-CV-01575-EMC<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404** |

# TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ............................................. 2

   I.   Bosch first sued Cardiocom in this District in a case involving patents closely related to the patents in this case and the same products. .......................................................... 2

   II.  In response to the California stay, Bosch sued Cardiocom in the Eastern District of Texas, which resulted in Judge Gilstrap transferring the case to this District for Convenience and Other Reasons. ........................................................................................................... 3

   III. Proceedings in California after the transfer. ............................................................ 4

   IV. It has already been adjudicated that there is substantial overlap between the factual issues in this case and the First Case. .............................................................................. 5

   V.  Bosch's suits against third parties in this District also relate to the same patent family............ 7

   VI. Bosch has no substantial connections to the Eastern District of Texas.................................... 7

      A.  Bosch's request for intra-district assignment of the First Case shows its connection to California, not the Eastern District of Texas.................................................... 8

      B.  Bosch-related witnesses are all connected to California, not the Eastern District of Texas. .................................................................................................................. 8

   VII. The Eastern District of Texas is inconvenient for Cardiocom and its witnesses....................... 9

**ARGUMENT** ........................................................................................................... 10

   I.   The law of the case is that Northern California is the most convenient forum for this district; retransfer therefore should not be done except under the most impelling and unusual circumstances. .................................................................................................... 10

      A.  Bosch showed no impelling circumstances that indicate this case is the unusual case that should be retransferred. .......................................................................... 11

      B.  The cases relied on by Bosch involve facts very different from this case. ..................... 15

**CONCLUSION** ....................................................................................................... 16

Defendant's Opposition to Plaintiff's      i       Case No. 3:14-CV-01575-EMC
Motion to Transfer Venue Pursuant to
28 U.S.C. § 1404

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5

*Ametek, Inc. v. Hewlett-Packard Co.*,
6
16 U.S.P.Q.2d 1477 (N.D. Cal 1990) ........................................................................10

7

*Arete Power, Inc. v. Beacon Power Corp.*,
No. C 07-5167 WDB, 2008 U.S. Dist. LEXIS 111000 (N.D. Cal. Feb. 22, 2008) ................13

8

*Christianson v Colt Indus. Operating Corp.*,
9
486 U.S. 800 (1988).....................................................................................................10

10

*Corley v. Kinder Morgan, Inc.*,
No. 12-03209, 2012 U.S. Dist. LEXIS 150392 (N.D. Cal. Oct. 18, 2012) .......................12, 14

11

*Decker Coal Co v. Commonwealth Edison Co.*,

12
805 F.2d 834 (9th Cir. 1986) .................................................................................11, 12

13

*Goor v. Vignoles*,
14
No. C 12-01794, 2012 U.S Dist. LEXIS 162935 (N.D. Cal. Nov. 13, 2012)..........................15

15

*In re Cragar Indus., Inc.*,
16
706 F.2d 503 (5th Cir. 1983) ...............................................................................10, 15

17

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ...................................................................................11

18

*Opperman v. Path, Inc.*,
19
No. 13-cv-00453, 2014 U.S. Dist. LEXIS 8885 (N.D. Cal. Jan. 22, 2014)...........................10

20

*Russell v. IU Int'l Corp.*,
21
685 F. Supp. 172 (N.D. Ill. 1998) ......................................................................15, 16

22

*Techschell, Inc. v. Incase Designs Corp.*,
No. C-11-04576, 2012 U.S. Dist. LEXIS 28076 (N.D. Cal. Mar. 2, 2012)...........................10

23

*W. Marine, Inc. v. Watercraft Superstore, Inc.*,
24
No. C11-04459, 2012 U.S. Dist. LEXIS 18973 (N.D. Cal. Feb. 14, 2012)...........................11

25

26

27

28

**STATUTES**

28 U.S.C. § 1404 ................................................................................................................3, 10, 16

28 U.S.C. § 1404(a) .............................................................................................................1, 4, 11

**OTHER AUTHORITIES**

Local Rule 3-12 ................................................................................................................................4

**INTRODUCTION**

A federal court has already carefully considered the proper venue for this case based on convenience and other factors, and accordingly transferred the case to this District. Judge Rodney Gilstrap of the Eastern District of Texas determined that the "similarities [between this case and Bosch's first case against Cardiocom (5:12-cv-03864-EJD, "the First Case")] suggest that judicial economy and comity would be served by transferring this case" to this District **and** that "[t]his is true even if the Court considers the convenience factors typically at issue in a motion to transfer under 28 U.S.C. § 1404(a)." (Dkt. No. 51 at 2.) Bosch's contention that the Texas Court transferred the case only for the purpose of determining whether this case should be related to the First Case is contrary to the Texas Order.

Bosch did not seek reconsideration or appellate review of the Texas Court's Order, issued over two months ago. Therefore, the law of the case is that California is the proper venue. Bosch, however, seeks another bite at the apple in the hope that this Court will return the volley in Bosch's attempt at venue Ping-Pong. Bosch fails, however, to show any reason to disturb the Texas Court's decision, and ignores the compelling reasons venue is proper in Northern California. Indeed, Bosch fails to show any *bona fide* reason this case should be transferred to Texas, far from the headquarters of both parties and any relevant witnesses.

Bosch is located in this District. Both parties in the present action are already engaged in litigation in this District in a case that involves similar patents and the same accused products as those in this suit. Bosch also filed a number of other lawsuits in this District against third parties, asserting patents from the same patent family as the patents in suit. The inventor of the subject matter of the patents in suit is located in this District. The only relevant connection this case had to the Eastern District of Texas is that Bosch elected to forum shop there to avoid a prior ruling here by Judge Edward Davila staying the First Case.

Moreover, the case in the Eastern District of Texas is closed. Texas has no other cases involving Bosch's patent portfolio. Granting Bosch's motion would only reward Bosch for

originally picking a venue for tactical reasons rather than convenience and judicial economy. The Court should deny Bosch's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    Bosch first sued Cardiocom in this District in a case involving patents closely related to the patents in this case and the same products.**

In July 2012, Robert Bosch Healthcare Systems, Inc. ("Bosch") invited Cardiocom's CEO and counsel to meet with Bosch executives and counsel in California after Bosch sought to license its patent portfolio to Cardiocom. (April 22, 2014 Decl. of Daniel W. McDonald (Dkt. No. 80) ¶ 3.)[1] The purpose of the meeting was to show Bosch why Cardiocom did not infringe the Bosch patents and did not need a license. (*Id.*) Bosch requested the meeting in Palo Alto, California, and stated that Jasper zu Putlitz, Bosch's CEO, would attend. The meeting was brief. Upon arrival, the Bosch executives handed Cardiocom a copy of the Complaint for a lawsuit it just filed against Cardiocom in this District. (*Id.*) Mr. Putlitz arrived late for the meeting.

The First Case, like this one, involves six patents that relate to communications systems for remotely monitoring patient health. (Case No. 12-3864, Dkt. No. 1 ¶¶ 5-10, Exs. A-F.) As in this case, Bosch contends that Cardiocom's Telehealth products infringe those patents. (Case No. 12-3864, Dkt. No. 1.) Cardiocom quickly initiated five *inter partes* reexaminations and one *ex parte* reexamination of the six patents in the California case. (Schultz Decl. ¶ 3.) The United States Patent and Trademark Office ("PTO") granted reexamination on all six of the asserted patents, initially issuing office actions rejecting the vast majority of the 200+ claims of those patents. (*E.g.*, *id.* ¶ 3; Ex. 2.)

Cardiocom moved to stay the First Case pending the reexaminations. On December 3, 2012, the Judge Davila granted Cardiocom's motion (Case No. 12-3864, Dkt. No. 43) and held, "[t]his action is STAYED in its entirety pending final exhaustion of the patent reexamination proceedings,

---

[1] The Declaration of Daniel W. McDonald was filed in Support of Defendant's Opposition to Plaintiff's Motion to Disqualify. The declaration is set forth as Exhibit 1 in the Declaration of William D. Schultz ("Schultz Decl.").

1   including any appeals." (*Id.* at 7.) The Court ordered the parties to file a status report of the

2   reexamination proceedings every six months. The case remains stayed.

3   **II.   In response to the California stay, Bosch sued Cardiocom in the Eastern District of Texas, which resulted in Judge Gilstrap transferring the case to this District for Convenience and Other Reasons.**

4

5           Five months after the stay, Bosch grabbed six more patents from its portfolio and filed this

6   case in the Eastern District of Texas on April 26, 2013, approximately five months after the First

7   Case was stayed. (Dkt. No. 1.) On June 17, 2013, shortly after the case was filed, Cardiocom

8   moved to transfer the case to this District. (Dkt. No. 15.)

9           While Cardiocom's motion to transfer was pending, the Texas case sat dormant. In

10  December 2013, the Texas court set a short scheduling conference for January 3, 2014, and required

11  the parties to meet and confer regarding a proposed schedule. The Court entered a scheduling order

12  after the scheduling conference. Two months later, March 10, 2014, the Texas Court granted

13  Cardiocom's motion to transfer. (Dkt. No. 51.)

14          Contrary to Bosch's characterization of Judge Gilstrap's Order (*E.g.*, Dkt. No. 92 at 5),

15  nowhere in the Order did Judge Gilstrap explain that he was transferring the case to this District for

16  the purpose of relation and/or consolidation with the First Case. (Dkt. No. 51 *passim*.) To the

17  contrary, Judge Gilstrap, after noting that the parties disputed the extent to which the § 1404

18  convenience factors should be considered in view of the first-filed California case, explained that he

19  "need not resolve this question, because . . . transfer is warranted under either circumstance." (*Id.* at

20  2.) Judge Gilstrap thus transferred the case for two reasons—the first filed case in California ***and*** the

21  convenience factors of § 1404. (*Id.*) At no point did Judge Gilstrap indicate his transfer Order

22  depended on what this Court might do with the case after it was transferred.

23          Bosch did not seek reconsideration of the Texas Court's Order or appellate review. Almost a

24  month later, on April 4, 2014, the Eastern District of Texas transferred the case to this District. (Dkt.

25  No. 52.) Upon transfer, the Eastern District of Texas terminated the case in that District. (Schultz

26  Decl. ¶ 4; *Ex.* 3.)

27

28

### III.     Proceedings in California after the transfer.

This Court assumed jurisdiction of this case on April 4, 2014, when it issued its Order Setting Initial Case Management Conference and ADR Deadlines. (Dkt. No. 53.)  On April 9, 2014, Cardiocom filed a request for administrative relief pursuant to Local Rule 3-12 before Judge Davila in the First Case to consider whether this case and the First Case should be related.  (No. 12-3864, Dkt. No. 55.)  Bosch opposed.

On May 1, 2014, the Court docket in the First Case was updated with a form "Related Case Order" together with a Clerk's Notice, and Clerk's certificate of Service.  The Related Case Order identified the First Case and the Second Case, the date, and left the judge signature block blank.  The Clerk's Notice contains the text "The court has reviewed the motion and determined that no cases are related and no reassignments shall occur."  (No. 12-3864, Dkt. No. 64.)  The Notice bears a date and signature of the Clerk. Contrary to Bosch's suggestion, however, the Notice does not say that these cases do not involve substantially overlapping issues.  (*Id.*)  Nor does it determine that the cases are or are not factually related.  (*Id.*)  And there is nothing in the Notice that contradicts the finding of the Texas Court that the Northern District of California is the proper venue for this case due to the factual similarities between it and the First Case and based on consideration of the convenience factors pursuant to 28 U.S.C. § 1404(a).[2]

This Court has scheduled a case management conference for July 10, 2014, and ordered the parties to meet and confer on various topics in June.  Further, Cardiocom filed a motion to stay the case pending *inter partes* review and *ex parte* reexamination proceedings that cover all claims of the six patents in suit. (Dkt. No. 98.)  That motion is pending.

---

[2] The Court's decision not to relate the cases at this time should not be a basis to transfer the case back to Texas.  As the Texas Court held and as described herein, the similarity of the patents and accused products show that the cases should proceed in the same jurisdiction.  Further, Cardiocom has moved to stay this case pending *inter partes* reviews and *ex parte* reexamination proceedings related to the patents in suit.  This case would be on track with the First Case if it were stayed.  Judicial economy would be promoted if any claim from either case survived the PTO decisions.

**IV.     It has already been adjudicated that there is substantial overlap between the factual issues in this case and the First Case.**

The Texas Court already found the "issues in this case substantially overlap with the issues in suit in the first-filed California case." (Dkt. No. 51 at 2.)  The Texas Court held all twelve patents "share specification language, prior art references, drawings, and priority claims." (*Id.*)  The Texas court also found that "[f]our of the patents in this suit share a portion of their file history with patents in the California suit, and the Patent and Trademark Office suggested that some of the patents-in-suit in this case were ***not patentably distinct*** from some of the patents in the California case." (*Id.* (emphasis added).)  Bosch did not appeal that decision, and its attempt to re-argue the same points is improper.

The six patents at issue in this case closely relate to the six patents asserted in the First Case.  All twelve patents at issue relate to methods and systems to remotely monitor patient health.   (No. 12-3864, Dkt. No. 1 ¶¶ 5-10; Dkt No. 1 ¶¶ 6-11.)  Four of the six patents in the California case and three of the patents in this case have the same title: "Networked System for Interactive Communication and Remote Monitoring of Individuals."  (No. 12-3864, Dkt. No. 1 at ¶¶ 5-7, 10; Dkt. No. 1 at ¶¶ 6, 10-11.)  All twelve of the patents share the same inventor, Stephen J. Brown.  Bosch acquired rights to all 12 from its acquisition of Health Hero Network, Inc. of Redwood City, California.  In its Order staying the proceedings pending the reexaminations, Judge Davila found all six patents in that case "share overlapping specifications." (No. 12-3864, Dkt. No. 43 at 1.)  Four of the patents in this case share the same specification as those six patents.  (Schultz Decl. ¶ 5; Exs. 4-5.)  The patents in both cases also share prior art references, drawings, priority claims, and specifications.[3]  (*Id.*)

Bosch contends all the products alleged to infringe the patents in the California case also infringe the products in this case.  Bosch, in both cases, alleges "The Cardiocom Telehealth system meets all of the limitations of one or more of the claims of the Patents-in-Suit, thereby infringing the

---

[3] Additional facts related to the similarities between the patents and issues in the First Case and this case are set forth in Cardiocom's motion to transfer this case from Texas to California and its reply in support of that motion.  (Dkt. Nos. 15, 26.)

Patents-in-Suit." (No. 12-3864, Dkt. No. 1 ¶ 13; Dkt. No. 1 ¶ 18.) The actual products at issue in both cases overlap, including the COMMANDER and OMNIVISOR lines.

Moreover, the allegedly infringing features of the accused products in this case overlaps with the allegedly infringing features in the First Case, as confirmed by a side-by-side comparison of those features from Bosch's two Complaints.

| Bosch's Description of Allegedly Infringing Features In The First Case | Bosch's Description of Allegedly Infringing Features In The Second Case |
|---|---|
| collect patient vital signs using wired and wireless peripherals, such as weight scales, blood pressure monitors, glucose meters, pulse oximeters, and peak flow meters; | collect patient physiological data using wired and wireless peripherals, such as weight scales, blood pressure monitors, glucose meters, pulse oximeters, and peak flow meters; |
| communicate with web based system via cellular transmission, phone line, or the Internet; | communicate with web based system via cellular transmission, phone line, or the Internet; |
| provide health messaging, education, surveys and questions through the Commander Flex, Commander, or Telescale devices to the patient to answer to assist the care provider in evaluating the patient's condition; | provide health messaging, education, and surveys through remote devices, such as the Commander Flex, Commander, or Telescale devices, to the patient; |
| | query the patient in a variety of formats including multiple choice, truefalse, Likert scale, and alphanumeric to assist the care provider in evaluating the patient's condition; |
| allow the care provider to remotely customize the session questions and messages, target and alert levels, and other key communication parameters, provided to the patient by the Commander Flex, Commander, or Telescale device; | allow the care provider to remotely customize the session questions and messages, target and alert levels, and other key communication parameters, provided to the patient by the remote device, including use of branching logic; |
| provide medication reminders to patients and permit care providers to remotely customize such medication reminders; | provide medication reminders to patients and permit care providers to remotely customize such medication reminders; |
| provide to the patient two-way personalized messaging that enables healthcare providers to instantly send unique, customized communications to individual patients or select groups; | provide to the patient two-way personalized messaging that enables healthcare providers to instantly send unique, customized communications to individual patients or select groups; |
| | interact with patients through both audible voice and written prompts; |

| | receive audible patient responses through the use of voice recognition; |
| | display population reports to care providers and prioritize patients needing intervention; |
| allow care providers to manage their patients' care plans in real time | allow care providers to manage their patients' care plans in real time. |

(No. 12-3864, Dkt. No. 1 at ¶ 12; Dkt. No. 1 at ¶ 17.)  The identity of products and significant overlap between the functionality at issue in the two cases, in addition to the similarities within the asserted patents in each case, demonstrate the substantial overlap of factual issues in both cases.

**V.    Bosch's suits against third parties in this District also relate to the same patent family.**

Bosch has filed multiple lawsuits against other companies in this District regarding the same family of patents at issue in this case and the First Case.  (Schultz Decl. ¶ 6; Ex. 6 at ¶ 16.)  Bosch filed lawsuits against Waldo Networks, Inc., MedApps, Inc., and Express MD Solutions, LLC in the Northern District of California.  In opposition to Cardiocom's motion to stay the First Case pending the reexaminations, Bosch claimed that "two other related cases[4] involving four of the six patents-in-suit are currently pending in this District."  (No. 12-3864, Dkt. No. 23 at 15 (emphasis added).)  Acknowledging the relevance of maintaining the cases in the same district, Bosch admitted that the other cases pending in this District "will still have to address and consider these patents."  (*Id.*)  After Bosch made that statement, the MedApps and Express MD cases were stayed (appropriate in this case as well).[5]

**VI.    Bosch has no substantial connections to the Eastern District of Texas.**

Although Bosch argued in the Texas case that convenience must be considered and favored keeping the case in Texas, Bosch supplied no relevant facts about why Texas was convenient.  (Dkt. No. 25 at 16-19.)  Nor does it cite any such facts here.  Bosch has little or no connection with

---

[4] *Robert Bosch Healthcare systems, Inc. v. Waldo Networks, Inc.*, No. 4:12-cv-00067 (N.D. Cal.) was dismissed by the time of Bosch's pleading. (Schultz Decl. ¶ 6; Ex. 6 at ¶ 17.)

[5] *Robert Bosch Healthcare Systems, Inc. v. MedApps, Inc.*, No. 3:12-cv-00113 (N.D. Cal.), has since been dismissed with prejudice.  (Schultz Decl. ¶ 7; Ex. 7.)  The other, *Robert Bosch Healthcare Systems, Inc. v. Express MD Solutions, LLC*, No. 4:12-cv-00068 (N.D. Cal.), like the First Case, has been stayed pending reexamination of the patents at issue in that case.  (Schultz Decl. ¶ 8; Ex. 8.)

Eastern Texas.  Bosch is a Michigan corporation with its principal place of business in Palo Alto, California.  A search of secretary of state records from all fifty states shows that Bosch registered in California, Colorado, Michigan, Missouri, New York, and Virginia.  (Schultz Decl. ¶ 9; Ex. 9.) Bosch is not registered in Texas.  (*Id.* ¶ 9.)  Further, Bosch has no facilities in Texas, let alone anywhere near the Marshall Division in the Eastern District of Texas, which sits roughly 150 miles East of Dallas, and 40 miles West of Shreveport, Louisiana.

**A.   Bosch's request for intra-district assignment of the First Case shows its connection to California, not the Eastern District of Texas.**

In the First case, Bosch requested intra-district reassignment.  (No. 12-3864, Dkt. No. 1 at ¶ 4.)  Bosch claimed that the First Case should not only be in California, but it should be in the County of Santa Clara, California, because "a substantial part of the events or omissions which give rise to the claim occurred in that county" and that was its principal place of business.  (*Id.*)  In addition to Bosch's admitted connection to California, Bosch's predecessor in interest, Health Hero Network, Inc., was also located in California.  (Schultz Decl. ¶ 10; Ex. 10.)  Patents at issue in both this case and the First Case show Health Hero was located in Redwood City, California; Mountain View, California; and Palo Alto, California.  (*Id.* ¶ 11; Ex. 11.)

**B.   Bosch-related witnesses are all connected to California, not the Eastern District of Texas.**

Given that Bosch's principal place of business is within this District, it stands to reason that most of Bosch's witnesses are located within this district.  The facts bear this out.  Particularly, several key witnesses that Bosch has identified in its Initial Disclosures reside or work in this District:

- **Stephen Brown,** named inventor on all twelve patents in this suit and the prior-pending suit in California. Mr. Brown currently resides in Woodside, California;

- **Karen Gilberg,** Director and Chief Medical officer for Robert Bosch Healthcare Systems, Inc.  Bosch identified Ms. Gilberg as having relevant information to the related patent suit in California.  Bosch stated that Ms. Gilberg's contact address was in care of the Orrick, Herrington & Sutcliffe LLP law firm in Menlo Park, California.  Ms. Gilberg resides in Toronto, Canada;

- **Peter Musso,** Manager, Sales Order Management for Bosch.  Bosch identified Mr. Musso as knowledgeable regarding "financial information, marketing and sales of Bosch products that

practice claims of the patents-in-suit," which are the same products at issue here. Mr. Musso resides in Los Altos, California

- **Scott Michelsen,** an employee of Health Hero. Mr. Michelsen corresponded with the Department of Veterans Affairs in relation to the technology Bosch claims is at issue in this case. Mr. Michelsen resides in California.

- **Klaus Bachmann,** Vice President of Finance of Robert Bosch Healthcare Systems, Inc. Mr. Bachmann provided a declaration in the California case regarding Bosch's competitors, licensees of related patents, and other lawsuits filed in California. Mr. Bachmann executed his declaration under oath in Palo Alto, California. Mr. Bachmann resides in California.

(*See, e.g.*, *id.* ¶ 12; Ex. 12 at 3-5.) Bosch has not identified a single witness that lives or works in the Eastern District of Texas. Further, the employees of Bosch managing the litigation are located in an office in Palo Alto, California.

## VII. The Eastern District of Texas is inconvenient for Cardiocom and its witnesses.

Cardiocom is a Minnesota limited liability company with a principal and executive office address in Chanhassen, just outside of Minneapolis, Minnesota. (Declaration of Daniel Cosentino ("Cosentino Decl.") ¶ 2.)[6] Cardiocom provides innovative home telemonitoring products and services from Minnesota, where its headquarters are located. (*Id.* at ¶ 6.) In addition to its physical presence in Minnesota, all of Cardiocom's records relating to design, development, sales, and support of its products and services are located in Minnesota. (*Id.* at ¶ 12.) Witnesses Cardiocom is likely to call at trial are also located in Minnesota, including all Cardiocom employees who were involved in the design, development, and marketing of the accused products. (*Id.*)

In its motion, Bosch points out that the geographic distance between Minnesota and the Eastern District of Texas is less than the distance between Minnesota and this District. (Dkt. No. 92 at 14.) Bosch then assumes that this means travel to the Eastern District of Texas will be easier, or at least no more burdensome, than travel to this district. This mileage comparison obfuscates that it is far more convenient to travel from Minneapolis to San Francisco than to Marshall, Texas. Cardiocom representatives and witnesses located in Minnesota can travel to this district using much

---

[6] The Declaration of Daniel Cosentino was filed as part of *My Health, Inc. v. Cardiocom, LLC*, No. 2:13-cv-00136-JRG-RSP. The declaration is set forth as Exhibit 13 in the Schultz Decl.

quicker direct flights.  Flights to the Eastern District, in contrast, require layovers and transfers, and much more travel time. Eastern Texas is not more convenient for anyone involved with this case.

## ARGUMENT

### I.      The law of the case is that Northern California is the most convenient forum for this district; retransfer therefore should not be done except under the most impelling and unusual circumstances.

Bosch argues that Judge Rodney Gilstrap transferred this case to this district "so that Judge Edward Davila in the first-filed case could determine whether or not this case was related to and should be consolidated with [the First Case]."  (*Id.* at 8.)  Judge Gilstrap's Order, however, contains no such language.  Instead, Judge Gilstrap found that under either the first-to-file rule *or* the § 1404 factors, transfer to this District was appropriate.  Nowhere did Judge Gilstrap state, as Bosch suggests, that his transfer Order was subject to subsequent procedural activity in California.

"[T]he decision of a transferor court should not be reviewed again by the transferee court." *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983) (internal quotations omitted).  "If the motion to transfer is granted and the case is transferred to another district, the transferee district should accept the ruling on the transfer as the *law of the case* and should not re-transfer except under the most impelling and unusual circumstances or if the transfer order is manifestly erroneous."  *Id.* (internal quotations omitted); *see also Opperman v. Path, Inc.*, No. 13-cv-00453, 2014 U.S. Dist. LEXIS 8885, at *13 (N.D. Cal. Jan. 22, 2014) ("'Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts.'" (quoting *Christianson v Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)); *Techschell, Inc. v. Incase Designs Corp.*, No. C-11-04576, 2012 U.S. Dist. LEXIS 28076, at *14 (N.D. Cal. Mar. 2, 2012) (denying motion to retransfer); *Ametek, Inc. v. Hewlett-Packard Co.*, 16 U.S.P.Q.2d 1477, 1478 (N.D. Cal 1990) (quoting *Cragar*).

Judge Rodney Gilstrap determined, after the parties fully briefed the issue, that this District was the most convenient forum for this case.  (Dkt. No. 51 at 1-2.)  As demonstrated below, there is no impelling or unusual circumstances in this case that would warrant retransfer. It is not for Bosch to second guess that decision unless it was manifestly erroneous.  Bosch has not even argued that it was, and thus as a threshold matter Bosch's motion should be denied.

### A.   Bosch showed no impelling circumstances that indicate this case is the unusual case that should be retransferred.

As the moving party, Bosch "bears the burden of showing that transfer is appropriate by illustrating a 'strong showing of inconvenience.'" *W. Marine, Inc. v. Watercraft Superstore, Inc.*, No. C11-04459, 2012 U.S. Dist. LEXIS 18973, at *22 (N.D. Cal. Feb. 14, 2012) (quoting *Decker Coal Co v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  Of course, as shown above, Bosch's burden here is much heavier because of the law of the case. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  Under § 1404(a), transfer is only appropriate where the convenience of the parties and the witnesses and the interest of justice favor transfer.  *W. Marine*, 2012 U.S. Dist. LEXIS 18973, at *23.

Convenience of the parties and the witnesses is determined through analysis of multiple factors, which include (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the difference in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *W. Marine*, 2012 U.S. Dist. LEXIS 18973, at *23-24.

Bosch has completely failed to show that there are "impelling or unusual circumstances" that warrant a determination that Judge Gilstrap has committed manifest error.  For the various reasons discussed above and below, this District is clearly the most convenient for the parties: Bosch is located here, important nonparty witnesses are located here, the parties are already litigating in this District, and the burden of continuing to litigate is lower in this District.  The issues surrounding this case have no connection with the Eastern District of Texas that would make any aspect of litigating in that district more convenient to the parties.

In determining which forum best serves the interests of justice, the Court may consider a number of factors, including local interests in deciding local controversies, each district's familiarity with the factual and legal issues, potential conflicts of law, and burdening citizens of an unrelated forum with jury duty. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Corley v. Kinder Morgan, Inc.*, No. 12-03209, 2012 U.S. Dist. LEXIS 150392, at *6 (N.D. Cal. Oct. 18, 2012). These factors favor this Court retaining jurisdiction over this case and Bosch fails to show any unusual or impelling circumstances to the contrary.

This case involves a conflict that arose within this District. Indeed, Bosch itself admits this, stating in its Complaint in the First Case (alleging infringement by Cardiocom's sales of the same products at issue in this case) that "a substantial part of the events or omissions which give rise to [Bosch's] claim occurred in" this District.[7] (No. 12-3864, Dkt. No. 1 at 2.) Bosch made no such statement with respect to Eastern Texas in its Complaint. Bosch is a local company, and this District and its residents have a vested interest in both Bosch and its intellectual property that is not present in the Eastern District of Texas.

At Bosch's choosing, this Court has also exercised jurisdiction over several cases involving patents related to those in this case. This fact, a situation created by Bosch, further demonstrates that the interests of justice are served by this District retaining jurisdiction. Moreover, because it is the citizens of this District that have this vested interest, it is the citizens of this District that should bear the burden of serving on a jury. There is no good reason to subject citizens of the Eastern District of Texas to the burden of serving on a jury for two corporations that would be foreign entities to these potential jurors.

The remaining public interest factors do not present impelling and unusual circumstances favoring transfer either. Bosch's sole argument for why the interests of justice allegedly favor the Eastern District of Texas is based on Bosch's speculation that Judge Gilstrap, who at over 900 patent cases has more such cases than any other judge in the country, has kept his schedule clear should this

---

[7] Though Bosch made this statement in its Complaint in the First Case, as explained above and below, the legal and factual issues in the two cases substantially overlap.

case be returned to it.  This argument is absurd and inaccurate,[8] yet it is Bosch's only argument relating to the factors under the interests of justice.

Bosch also fails to show impelling facts regarding the private interest factors that would warrant retransfer.  First, the relative ease of access to sources of proof factor favors California.  The inventor of all six patents in suit resides in Woodside, California.  Bosch has a principal place of business in Palo Alto, California, where the bulk of its relevant material is presumably located.  The majority of Bosch's witnesses presumably reside in California, and Bosch has identified no relevant witnesses in the Eastern District of Texas.  Cardiocom's relevant documents are located in Minnesota.

A majority of the non-party witnesses are located in this District, while very few, if any, are located in Texas. This District has subpoena power throughout the state of California, with discretion as to nonparty witnesses.  *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 U.S. Dist. LEXIS 111000, at *26 n.1 (N.D. Cal. Feb. 22, 2008).  Employees of Bosch, and former employees of Health Hero, who work or reside in California, are within the subpoena power of the Northern District of California.  In contrast, there are no known witnesses in the Eastern District of Texas.

Costs of litigating also favors transfer.  Cardiocom has no relevant witnesses in Texas.  This District is a more convenient forum than the Eastern District of Texas for witnesses in Minnesota, where Cardiocom is located.  Non-stop flights exist between Cardiocom's headquarters in Minneapolis and either San Jose or San Francisco.  In contrast, flights from Minneapolis to Shreveport, Louisiana, where witnesses would fly to attend hearings and trial in the Eastern District of Texas, require transfers and much more travel time. Given the number of party and non-party witnesses who reside within the Northern District of California, the fact that very few or no witnesses reside anywhere in Texas, and the comparative travel times for the remaining party and

---

[8] Judge Gilstrap has another case schedule to go to trial on the previously scheduled trial date of January 12, 2015.  (*See* Schultz Decl. ¶ 14; Ex. 14.)

non-party witnesses, the "cost of litigating" factor strongly favor the Northern District of California and further show the lack of impelling circumstances which are required to retransfer the case.

Bosch makes much of its choice of forum in the Eastern District of Texas. A Plaintiff's choice of forum, however, is afforded little weight where the Plaintiff is not located in that forum and the forum has minimal contacts with its chosen forum. *Corley*, 2012 U.S. Dist. LEXIS 150392, at *4-5. Further, that factor was already considered in Texas and presents no impelling circumstances for retransfer.

Bosch largely premises its motion on its allegation that circumstances relating to the Eastern District of Texas's transfer have changed due to Judge Davila's decision not to procedurally relate this case to the First Case. Bosch merely "presume[es]" that the cases were not related cases "in light of the different patents, accused products, issues . . . [, etc.]." (Dkt. No. 92 at 12.) The form order, however, contains no such rationale and no presumption is warranted. Indeed, as Bosch's motion to strike parts of Cardiocom's administrative motion made clear, "[c]onsolidation is different from a finding that two cases are related, and has different effects."[9] ((No. 12-3864, Dkt. No. 60 at 2.) As detailed above, and as already adjudicated by Judge Gilstrap and not appealed by Bosch, the cases substantially overlap. This decision should not be overturned lightly, let alone based on presumptions regarding the rationale for a form administrative order.

Cardiocom has now moved to stay this case pending the *inter partes* proceedings before the PTO. If this stay is granted, it may make sense to relate and consolidate this case and the First Case at a later date, especially if (as is likely) the number of patents and claims in each case is significantly reduced through the PTO proceedings. The decision on the administrative motion does not show there will be no consolidation of the cases at the appropriate time. In any event, that one limited administrative decision, signed by a clerk, is hardly an impelling and unusual circumstance that would support retransfer.

---

[9] Cardiocom's response to Bosch's motion to strike recognized that the Court may wish more full briefing on consolidation, and argued that the motion was unnecessary because Cardiocom's motion already recognized that the Court may wish to address consolidation separately. (No. 12-3864, Dkt. No. 62 at 2; *see also* Dkt. No. 55 at 4.)

Moreover, there are two cases pending in this district, including the First Case and Bosch's case against Express MD, both currently stayed, that involve patents related to the patents in suit in this case.  Bosch is already litigating these issues here and can articulate no reason why it would be more convenient to also litigate them in another, distant district.

**B.      The cases relied on by Bosch involve facts very different from this case.**

Bosch cites *Russell v. IU Int'l Corp.*, 685 F. Supp. 172 (N.D. Ill. 1998); *Cragor*; and *Goor v. Vignoles*, No. C 12-01794, 2012 U.S Dist. LEXIS 162935 (N.D. Cal. Nov. 13, 2012), to support its position that changes in circumstances can warrant re-transferring a case to the Court that originally had jurisdiction over it.  These cases do not support Bosch's position.

As an initial matter, nothing regarding the relevant facts about this case has changed aside from the fact that the case is now pending in this District. The decision not to procedurally relate this case to the First Case is actually an absence of a change, as this case was not procedurally related to the First Case at the time of transfer, either.  The case was not conditionally transferred.

Moreover, the cases Bosch cites are either contrary to Bosch's position or factually distinguishable.  Indeed, two of the three cases Bosch relies upon ultimately resulted in a ***denial*** of the motion to re-transfer.  For example, the Fifth Circuit in *Cragar **declined*** to re-transfer a case from Western District of Louisiana to the Northern District of Mississippi.  706 F.2d at 506.  Thus, rather than supporting Bosch's position, *Cragar* actually weighs in favor of this Court retaining jurisdiction.  In *Goor*, the court also ***declined*** to re-transfer the case.  2012 U.S. Dist. LEXIS 162935, at *1.  The court's statements whether a re-transfer might have been granted had there not been a jurisdictional problem with the transferee district are (a) dicta and (b) appear to be based on the court's concern that the defendant had deceived the original court in order to secure the initial transfer.  *Id*. at *7 (explaining Defendant's statement may have misled and left the transferee court with a misimpression).

In *Russell*, parties already engaged in litigation in the Northern District of Illinois became parties to another case in the Middle District of Florida.  685 F. Supp. at 173-74.  Unlike this case, the Illinois Court enjoined the parties from participating in the Florida action, other than transfer

proceedings, until the Illinois Court provided a further order. *Id.* at 174. The Florida Court transferred the case to Illinois due to the injunction. The Illinois Court found that the sole reason the case was transferred was to consolidate the case with Illinois case. *Id*. at 176. The Illinois Court, finding the case was not related, could not be re-assigned, and consolidation would never occur, transferred the case back to Florida. *Id*. Unlike the *Russell* case, Judge Gilstrap made no finding that the transfer was contingent on consolidation. Rather, this case was transferred without condition based on the first-to-file rule and the § 1404 convenience factors. Moreover, unlike the *Russell* case, consolidation may become appropriate in the future depending on the outcome of the reexamination and *inter partes* review proceedings.

California is the most convenient forum and that is the law of the case. There is no basis to retransfer this case and Bosch's attempt to do so should be denied.

## CONCLUSION

The law of the case holds that California is the proper jurisdiction to hear this case. The Texas Court found that this jurisdiction is more convenient. Indeed, Bosch has two other pending litigation proceedings in this jurisdiction related to the patents in this case. Conversely, there is no relation to Texas. Cardiocom respectfully requests that the Court deny Bosch's motion to transfer.

Dated: May 22, 2014                    Respectfully submitted,

                                       MERCHANT & GOULD P.C.

                                       */s/ Daniel W. McDonald*
                                       Daniel W. McDonald

                                       Attorneys for Defendant CARDIOCOM, LLC

## E-FILING ATTESTATION

I, Timothy G. Majors, am the ECF User whose ID and password are being used to file **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Daniel W. McDonald, signer, has concurred in this filing.

Dated:  May 22, 2014                            _/s/ Timothy G. Majors_____
                                                                 Timothy G. Majors

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2014, a true and correct copy of the foregoing document is being filed electronically with the Clerk of the United States District Court for the Northern District of California by using the CM/ECF system, which will send notice of such filing to all counsel of record.

Date:  May 22, 2014                            _/s/ Timothy G. Majors_____
                                                               Timothy G. Majors