1  CHRIS R. OTTENWELLER (State Bar No. 73649)
     cottenweller@orrick.com
2  BAS DE BLANK (State Bar No. 191487)
     basdeblank@orrick.com
3  SIDDHARTHA VENKATESAN (State Bar No. 245008)
     svenkatesan@orrick.com
4  LILLIAN MAO (State Bar No. 267410)
     lmao@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
6  Menlo Park, California  94025
   Telephone:     (650) 614-7400
7  Facsimile:     (650) 614-7401

8

   Attorneys for Plaintiff
9  ROBERT BOSCH HEALTHCARE SYSTEMS, INC.

10

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO DIVISION

14

15  ROBERT BOSCH HEALTHCARE          Case No. 14-CV-01575 EMC
    SYSTEMS, INC.,
16                                   **BOSCH'S OPPOSITION TO
                   Plaintiff,        CARDIOCOM'S MOTION TO STAY
17                                   LAWSUIT PENDING *INTER PARTES*
            v.                       REVIEW AND REEXAMINATION OF
18                                   PATENTS-IN-SUIT**
    CARDIOCOM, LLC and ABBOTT
19  DIABETES CARE, INC.,             Date:        June 19, 2014
                                     Time:        1:30 p.m.
20                 Defendants.       Courtroom: 5
                                     Judge:       Edward M. Chen
21
              REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.    FACTS ............................................................................................................ 2

    A.    Cardiocom Litigated This Case and Is Now Moving to Stay Only for Tactical Reasons ............................................................................. 2

    B.    Cardiocom's Results Before the Patent Office Do Not Justify a Stay. ................... 4

    C.    Bosch and Cardiocom are Direct Competitors, and Bosch Is Being Harmed by Cardiocom's Infringement. ............................................... 6

III.    LEGAL STANDARDS .................................................................................... 9

IV.    ARGUMENT ................................................................................................... 10

    A.    Cardiocom's Significant Delay in Seeking a Stay Is in Itself Sufficient Reason to Deny the Motion ................................................... 10

    B.    The Three Factors Weigh Against a Stay. ........................................ 12

        1.    A Stay Will Cause Unfair Prejudice to and Disadvantage Bosch............ 12

            a.    Bosch Is Being Harmed in the Marketplace. ................................ 13

            b.    The Longer the Stay, the Greater the Prejudice to Bosch. ............ 14

        2.    The Proceedings Before the Patent Office Will Not Significantly Simplify the Issues in the Case. ............................................... 16

        3.    Cardiocom Cannot Use Its Own Stonewalling to Justify a Stay .............. 18

    C.    Judge Davila's Decision to Stay an Earlier, Unrelated Case Does Not Control the Outcome Here. .................................................. 18

V.    CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008) ........................................................................................ 9, 13

*Affinity Labs of Tex. v. Apple Inc.*,
    No. 09-04436 CW, 2010 U.S. Dist. LEXIS 50974 (N.D. Cal. April 29, 2010) ................... 11

*Avago Tech. Fiber v. IPTronics*,
    No. 10-CV-02863-EJD, 2011 U.S. Dist. LEXIS 82665 (N.D. Cal. July 28, 2011) ...... 9, 13, 14

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
    No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960 (D. Del. Sept. 2, 2010) .............................. 12

*Biomet Biologics v. Bio Rich Med.*,
    No. SACV 10-1582 ...................................................................................................... 13, 14

*Cynosure, Inc. v. Cooltouch, Inc.*,
    No. 08-10026-NMG, 2009 U.S. Dist. LEXIS 70493 (D. Mass. Aug. 10, 2009) ................... 11

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (U.S. 2006) ..................................................................................................... 13

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) ............................................................................................. 9

*IMAX Corp. v. In-Three, Inc.*,
    385 F. Supp. 2d 1030 (C.D. Cal. 2005) ................................................................................ 10

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................................................... 9

*Largan Precision Co., Ltd. v. Fujifilm Corp.*,
    No. C 10-1318 ................................................................................................................... 9, 17

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
    No. C-12-4958-PSG, 2013 U.S. Dist. LEXIS 118723 (N.D. Cal. Aug. 16, 2013) ................. 9

*Sorenson v. Digital Networks N. Am., Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................................................... 9

*Soverain Software LLC v. Amazon.com, Inc.*,
    2008 U.S. Dist. LEXIS 6454 (N.D. Cal. Jan. 16, 2008) ......................................................... 9

*Telemac Corp. v. Teledigital, Inc.*,
    450 F. Supp. 2d 1107 (N.D. Cal. 2006) ................................................................................. 9

*Tesco Corp. v. Weatherford Int'l, Inc.*,
 599 F. Supp. 2d 848 (S.D. Tex. 2009) ...................................................................... 10

*TPK Touch Sol'ns, Inc. v. Wintek Electro-Optics Corp.*,
 2013 U.S. Dist. LEXIS 162521 (N.D. Cal. Nov. 13, 2013) ................................. 9, 13

*Unidisco v. Schattner*,
 210 U.S.P.Q. 622 (D. Md. 1981) ................................................................................ 10

**Statutes**

35 U.S.C. § 314(a) ............................................................................................................ 5

35 U.S.C. § 314(b) .......................................................................................................... 15

35 U.S.C. § 315(e)(2) ...................................................................................................... 17

35 U.S.C. § 316(a)(11) .................................................................................................... 15

Plaintiff Robert Bosch Health Care Systems, Inc. ("Bosch") hereby opposes Defendant Cardiocom, LLC's ("Cardiocom") motion to stay (Dkt. No. 98).

## I.  INTRODUCTION

This is a patent infringement action brought by Bosch against its direct competitor Cardiocom.  After litigating this case for over a year, Cardiocom has moved for a stay pending the outcome of petitions it filed with the U.S. Patent Office seeking post-grant review of the Bosch patents-in-suit.  A stay, however, is plainly unjustified.  Bosch has already defeated petitions by Cardiocom on nearly half of the patents-in-suit, with the Patent Office finding that Cardiocom had not even made the threshold showing needed to institute proceedings.  Moreover, were a stay granted, Cardiocom would be able to continue its infringement unchecked and unfairly force Bosch to compete against its own patented technology while Cardiocom "runs out the clock" on Bosch's patents, which expire in 2016 and 2017.  Because of the unique and time-sensitive opportunities available to Bosch and a small number of competitors, including Cardiocom, there would be no way to compensate Bosch for this harm.

Bosch's infringement claims should be adjudicated without further delay.  The parties have already invested substantial effort and resources in this litigation, including document production; written discovery; infringement and invalidity contentions; and claim construction exchanges.  The Court has now heard Bosch's motion to disqualify Cardiocom's counsel.  And Bosch's motion to transfer this case back to Texas, where it was originally brought, would put this case back on track for a quick and efficient resolution.[1]  Cardiocom's decision to seek a stay at this late hour is but a tactical maneuver designed to avoid the consequences of Bosch's motions.  Such gamesmanship should not be rewarded by the Court.

Rather than explain its thirteen-month delay or try to justify why a stay is appropriate at this late stage, Cardiocom relies almost entirely on Judge Davila's decision to stay a separate, unrelated case between the parties.  That decision, however, was based on completely different facts.  First, Judge Davila relied on an offer made by Bosch's predecessor-in-interest to license

---

[1] Transfer to Texas would moot the present motion, as any stay should be decided by the Texas court.

different patents to Cardiocom in order to find that Cardiocom's status as a competitor did not preclude a stay. The patents asserted in this case, however, issued *after* that license offer was extended to, and rejected by, Cardiocom, making such conduct irrelevant to this case. Thus, the competitive harm to Bosch weighs strongly against a stay. Second, the Patent Office instituted proceedings on all six patents in Judge Davila's case, whereas here the Patent Office has already rejected several of Cardiocom's petitions. Finally, in that case, Cardiocom sought a stay at an early stage and before any of the substantial litigation activities that have occurred here.

In short, neither Judge Davila's earlier decision nor the facts of this case support a stay, and Cardiocom's motion should be denied.

## II.   FACTS

Cardiocom's motion to stay is the latest in a string of tactics to delay and avoid a decision on the merits. Cardiocom knows the patents-in-suit are expiring and hopes to avoid liability through such procedural gambits. To date, Cardiocom has sought to institute eleven *inter partes* reviews and two *ex parte* reexaminations before the United States Patent Office ("PTO"), on just the six patents-in-suit. While the PTO rejected petitions on half of the patents, Cardiocom continues to infringe. Cardiocom now seeks to "run out the clock" on the patents-in-suit by ensuring that the patents expire before Bosch gets its day in court.

### A.   Cardiocom Litigated This Case and Is Now Moving to Stay Only for Tactical Reasons.

Bosch filed this case over a year ago, on April 26, 2013, in the Eastern District of Texas. On June 17, 2013, Cardiocom made the tactical decision to move to transfer the case to this district based on the "first-filed" rule rather than seek a stay while the case was at an early stage. (Dkt. No. 15.) Even after Cardiocom had filed petitions for *inter partes* review (IPR) with the PTO, Cardiocom expressly conceded that "a stay of this case is not at issue in this motion . . . ." (Dkt. No. 26 at 4.)

While Cardiocom's motion to transfer was pending, the Court set a scheduling conference on January 3, 2014. (Dkt. No. 38.) Cardiocom did not raise the issue of a stay with the Court or even address the pending motion to transfer. Instead, the parties and the Court proceeded with

the litigation. Bosch served its infringement contentions on December 20, 2013, detailing how the accused Cardiocom products infringe specific claims. (Decl. of Andrew S. Ong in Supp. of Opp. to Mot. to Stay ("Ong Decl."), ¶ 3.) The Court set the case for trial in January 2015, and the parties submitted a proposed docket control order in which Cardiocom agreed, *inter alia*, to substantially complete document production by May 16, 2014 – two weeks ago. (Dkt. No. 43 at 3.)

To meet these deadlines, the parties began discovery in earnest. Beginning in late January 2014, the parties exchanged document requests and interrogatories. (Ong Decl., ¶ 4.) Cardiocom served invalidity contentions on February 14, 2014. (*Id.*, ¶ 5.) As required by the Texas Patent Rules, Cardiocom simultaneously produced documents showing the operation of accused instrumentalities, including source code. (*Id.*) In February, Bosch's counsel and expert flew to Minneapolis, where Cardiocom produced its source code, to spend days reviewing the code and documenting specific instances of infringement. (*Id.*, ¶ 6.) Pursuant to Judge Gilstrap's Standing Order, Bosch then served supplemental infringement contentions incorporating the source code evidence on March 17, 2014. (*Id.*, ¶ 7.) To date, Cardiocom has produced approximately 13,400 pages of documents in discovery, and Bosch has produced over 73,000 pages. (*Id.*, ¶ 8.) The parties have also provided over 6,000 pages of contentions and interrogatory responses. (*Id.*)

While Cardiocom remained silent on the issue of a stay, the case proceeded to the claim construction phase. On February 21, 2014, pursuant to Texas Patent Rule 4-1, the parties exchanged their identification of terms that may require construction, with Cardiocom identifying 110 terms (not counting variations) across the six patents. (*Id.*, ¶ 9.) The parties met and conferred in an effort to reduce this list. (*Id.*) On March 14, 2014, pursuant to Texas Patent Rule 4-2, the parties exchanged their preliminary claim constructions for the previously identified terms. (*Id.*, ¶ 10.) The parties also exchanged extrinsic evidence that they intended to rely upon. (*Id.*) Based on the parties' exchanges and discussions, Bosch prepared a draft Joint Claim Construction Statement and sought to meet and confer with Cardiocom in order to narrow the issues. (*Id.*, ¶ 11.) Cardiocom, however, refused to participate in finalizing the joint statement, forcing Bosch to file a separate Claim Construction Statement on April 15, 2014. (Dkt. No. 72.)

On March 10, 2014, the Texas Court granted Cardiocom's motion to transfer the case to this district. (Dkt. No. 51.) Since then, the parties and this Court did substantive work, and still Cardiocom did not seek a stay. The case appeared on this Court's electronic docket on April 8, 2014. Bosch, having discovered a serious conflict of interest on the part of Cardiocom's counsel, promptly filed a motion to disqualify Cardiocom's counsel at Merchant & Gould. (Dkt. No. 60.) Thereafter, Cardiocom moved to relate this case to an earlier, stayed case between Bosch and Cardiocom pending before Judge Davila. (*Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*, Case No. 12-cv-03864 ("First Case"), Dkt. No. 55.) Cardiocom also moved to vacate the hearing on Bosch's motion to disqualify, which Bosch opposed and the Court ultimately denied as moot. (Dkt. Nos. 68, 70, 88.) Cardiocom further sought *pro hac vice* admission for additional Merchant & Gould attorneys, over Bosch's objection. (Dkt. Nos. 73, 74.) On May 1, 2014, Judge Davila determined that this case and the First Case are not related. (Case No. 12-cv-03864, Dkt. No. 64 at 2.) Since Judge Davila's decision eliminated any reason for this case to proceed in this district instead of Bosch's originally-selected forum, Bosch moved to transfer this case back to Texas. (Dkt. No. 92.) As of the filing of this opposition, Bosch's motion to transfer will have been fully briefed.

On May 15, 2014, having litigated for over a year and only when faced with pending motions to disqualify its counsel and re-transfer the case to a forum that Cardiocom believes to be "stay-adverse" (Mot. at 8), Cardiocom finally moved for a stay.

**B.    Cardiocom's Results Before the Patent Office Do Not Justify a Stay.**

Cardiocom argues that a stay is warranted because of its pending request to have the PTO invalidate claims of the asserted patents. But there has been no action by the PTO to make a motion to stay now timely. To the contrary, the PTO has rejected a number of Cardiocom's petitions.

In July 2013, nearly three months after Bosch filed this case, Cardiocom filed petitions for IPR of all six patents-in-suit. These petitions failed, however, to identify even a single anticipatory reference for any claim. Instead, Cardiocom alleged that the patents-in-suit were obvious over combinations of up to four separate prior art references. As noted above,

Cardiocom did not move to stay after filing the IPRs – a tacit admission that such a motion would be unwarranted.

In January 2014, the PTO issued decisions on Cardiocom's petitions. Two of Cardiocom's petitions were denied in their entirety. (Ong Decl., Exs. 5-6.) The petitions on the other four patents were denied in part, with the PTO instituting review only on certain claims and on limited grounds. (*See* Dkt. Nos. 100-5 to 100-9.) The PTO's decisions are summarized in the following chart, alongside a list of the asserted claims:

| Patent | PTO Decision on July 2013 Petitions | Claims Asserted in Litigation |
|---|---|---|
| 7,921,186 ("'186 patent") | Granted on claims 1-6 but as to grounds 6 and 7 only. Denied as to grounds 1-5. | 1-4, 6, 9-12, 14, and 15 |
| 7,769,605 ("'605 patent") | Denied. | 1-4 and 7-9 |
| 7,840,420 ("'420 patent") | Granted on claims 1-5 but as to grounds 1 and 4 only. Denied as to grounds 2 and 3. | 1-5 |
| 7,587,469 ("'469 patent") | Granted as to claims 1, 2, and 5-10 only. (Denied as to claims 3, 4, and 11-22.) | 1-3, 10-13, 16-19, and 22 |
| 7,870,249 ("'249 patent") | Denied. | 1, 2, 6-8, and 11-13 |
| 7,516,192 ("'192 patent") | For claims 1-19, granted as to grounds 1 and 2 only; for claims 20-37, granted as to grounds 1-3. | 1-4, 6, 8-11, 17-21, 23, 24, 26-29, 31-33, and 35-37 |

Thus, ***all claims of two of the six patents-in-suit, and most of the asserted claims of a third patent are not subject to any instituted proceeding***. As to those claims, the PTO determined that Cardiocom had not shown even "a reasonable likelihood" of prevailing. (Ong Decl., Ex. 5 at 19; Ex. 6 at 15; *see also* 35 U.S.C. § 314(a).) If Cardiocom is right that "the vast majority of requests for *inter partes* review are accepted" (Mot. at 17), then Cardiocom's rate of failure demonstrates the weakness of Cardiocom's invalidity arguments.

The four instituted proceedings were placed on a coordinated schedule with oral argument set for September 9, 2014. (*See* Dkt. Nos. 100-10 to 100-12.) But, perhaps recognizing that the PTO's limited review would not be an adequate basis, Cardiocom again chose not to move to stay this case.

1       Between February and April 2014, Cardiocom (through its parent company Medtronic)

2    filed another four IPR petitions targeting the '605, '249, and '469 patents, on which Cardiocom

3    earlier had had little to no success. As before, Cardiocom failed to identify any anticipatory prior

4    art. None of these newly requested proceedings have been instituted. Bosch has only had the

5    opportunity to respond to the earliest-filed of these new petitions. In that response, Bosch

6    demonstrates that the petition is procedurally barred, and that Cardiocom has failed to show that

7    any claim is invalid. Once more recognizing that the pending petitions do not justify a stay,

8    Cardiocom continued to litigate this case.

9       Cardiocom also fell back on the old, slow reexamination procedure and filed requests for

10   *ex parte* reexamination against the '605 and '249 patents on February 27 and March 7, 2014,

11   respectively. (Dkt. No. 99, ¶ 13.) As with the new IPR petitions, the PTO has yet to rule on

12   either of these requests, and Cardiocom did not seek a stay after filing them.

13       There has been no recent action by the PTO to justify a stay of the case. Indeed,

14   Cardiocom's decision to litigate – coupled with the PTO's rejection of Cardiocom's IPR

15   arguments – shows that a stay is unwarranted.

16    **C.**     **Bosch and Cardiocom are Direct Competitors, and Bosch Is Being Harmed**
17           **by Cardiocom's Infringement.**

18       Bosch would be harmed by a stay of this litigation. (Decl. of Klaus Bachmann in Supp. of

19   Opp. to Mot. to Stay ("Bachmann Decl."), ¶ 11; Decl. of William C. Broderick in Supp. of Opp.

20   to Mot. to Stay ("Broderick Decl."), ¶ 15; Decl. of Tim Conroy in Supp. of Opp. to Mot. to Stay

21   ("Conroy Decl."), ¶ 14.)[2] Bosch is heavily impacted by Cardiocom's continued patent

22   infringement, which allows it to compete unfairly with Bosch in the marketplace. (Bachmann

23   Decl., ¶ 11; Broderick Decl., ¶ 15.) ████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████

25   Thus, a stay would be extremely prejudicial.

26

27

28

---

[2] The declarations of Messrs. Bachmann, Broderick, and Conroy, who are all Bosch personnel,
are being submitted under seal.

Bosch and Cardiocom are direct competitors in the telehealth market. (Broderick Decl.,

¶ 3; *see also* Conroy Decl., ¶ 13.) Telehealth, as explained by the U.S. Department of Health and

Human Services, refers to "the use of electronic information and telecommunications

technologies to support long-distance clinical health care, patient and professional health-related

education, public health and health administration." *Telehealth*, http://www.hrsa.gov/ruralhealth/

about/telehealth/ (last accessed May 29, 2014). Bosch provides two telehealth systems – the

Health Buddy telehealth system and the T-400 telehealth system – that allow at-home patients to

communicate remotely with their healthcare providers, collect physiological measurements,

transmit data about their health status, and receive health-related education. (Broderick Decl., ¶

4.) These systems also enable healthcare providers to monitor and manage large populations of

patients, remotely reconfigure patient devices, and easily identify patients needing follow-up care.

(*Id.*) These features are at the heart of the patents-in-suit. Cardiocom has consistently marketed

its own products as similar to Bosch's systems by emphasizing those same features. (*Id.*, ¶ 5.)

Thus, by using Bosch's intellectual property, Cardiocom is able to leverage Bosch's historical

success to promote Cardiocom products. (*Id.*, ¶ 6.)

Bosch and Cardiocom directly and regularly compete with each other for important

contracts with telehealth customers including healthcare providers, hospital systems, insurance

companies, and hospice care providers. (*Id.*, ¶ 3.) In particular, Bosch and Cardiocom are two of

only five telehealth vendors competing for business from the U.S. Department of Veterans Affairs

("VA"). (*Id.*, ¶ 8.) In 2011, the VA selected Bosch and these additional vendors to compete for

an expected $225 million worth of home health monitoring services contracts, to be completed

within five years. (Bachmann Decl., ¶ 5.)

The VA plays a key role in the telehealth market, in part because it has the largest

telehealth deployment in the world. (Broderick Decl., ¶ 7.) The VA publishes its outcomes,

many of which comprise results from use of Bosch's Health Buddy system, and which are widely

cited by advocates of telehealth. (*Id.*) ████████████████████████████████████

████████████████████████████████████████████████████████ In addition,

the VA contract helps Bosch attract other customers. (Conroy Decl., ¶ 7.) Contracts like those

with the VA are crucial to a telehealth business because ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

Since 2011, when the VA first selected Cardiocom as a vendor, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████

Once a customer begins using a particular vendor's telehealth solution, there are

significant "lock-in" effects that make the customer less likely to switch away from its selected

technology. (Broderick Decl., ¶ 14.) For example, there are significant transaction costs,

including equipment, IT, and the need to train clinicians on work flow changes. (*Id.*) In addition,

patients place a high premium on the comfort and consistency of a known and reliable patient

care technology. (*Id.*) Thus, once Bosch loses a contract to Cardiocom, it becomes much more

difficult for Bosch to win that customer in the future. (*Id.*) The lock-in problem is particularly

acute in the VA system because of ████████████████████████████████████

██████████████

Moreover, the harm to Bosch from losing a contract cannot merely be measured in

Cardiocom's corresponding sales. (*Id.*, ¶ 13.) Rather, Cardiocom is depriving Bosch of customer

relationships and immeasurable opportunities to introduce its telehealth systems to patients and

sell additional services and features to customers. (*Id.*)

The harm caused by Cardiocom described above was just becoming apparent when Bosch

filed the First Case in 2012, alleging that Cardiocom infringes six patents not asserted here. The

situation has only worsened since Cardiocom successfully moved to stay that case, confirming that Bosch's business will be irreparably injured if Cardiocom's infringement is permitted to continue during the pendency of a stay.

## III.   LEGAL STANDARDS

There is no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule "would invite parties to unilaterally derail" litigation. *Largan Precision Co., Ltd. v. Fujifilm Corp.*, No. C 10-1318 SBA, 2011 U.S. Dist. LEXIS 25423, at *6 (N.D. Cal. Mar. 1, 2011) (citing *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)).  The decision whether to stay an action is entirely within this Court's discretion. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988).  "The party seeking the stay has the burden of showing the appropriateness of the stay."  *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. C-12-4958-PSG, 2013 U.S. Dist. LEXIS 118723, at *10-11 (N.D. Cal. Aug. 16, 2013).

Courts consider the following factors when determining whether to grant or deny a stay pending reexamination: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date bas been set. *See Telemac Corp. v. Teledigital, Inc.* 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006).  "Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent."  *Sorenson v. Digital Networks N. Am., Inc.*, 2008 U.S. Dist. LEXIS 6454, at *5 (N.D. Cal. Jan. 16, 2008).

Courts have generally denied requests for stays when the parties are competitors in the marketplace, finding that such a stay would prejudice the non-moving party because "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages."  *Avago Tech. Fiber v. IPTronics*, No. 10-CV-02863-EJD, 2011 U.S. Dist. LEXIS 82665, at *16 (N.D. Cal. July 28, 2011) (citing *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008)); *TPK Touch Sol'ns, Inc. v. Wintek Electro-Optics Corp.*, 2013 U.S. Dist. LEXIS 162521, at *17 (N.D. Cal. Nov. 13, 2013) ("Because TPK

and Wintek are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise."); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) (collecting cases). For a stay to be granted in the face of prejudice to the non-moving party, the moving party must make out a "clear case of hardship or inequity in being required to go forward." *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005) (quoting *Unidisco v. Schattner*, 210 U.S.P.Q. 622, 629 (D. Md. 1981)).

## IV. ARGUMENT

Cardiocom's motion to stay should be denied for multiple independent reasons. First, Cardiocom's delay in seeking a stay shows that it is doing so now only to seek an improper tactical advantage. That, in itself, justifies denying a stay. Second, Cardiocom has not met its burden to show that the multi-factor test weighs in favor of a stay. Because the parties are direct competitors, Bosch will suffer significant prejudice from a stay, which delays Bosch's ability to vindicate its patent rights while Cardiocom continues its course of long-term, willful infringement. Furthermore, a stay will not significantly simplify the issues in this case because a third of the asserted patent claims are not subject to instituted PTO proceedings, and Cardiocom plainly intends to relitigate any unfavorable results from the proceedings that *are* pending. The amount of activity that has occurred in litigation also weighs against a stay.

Instead of addressing the merits of a stay in *this* case, Cardiocom fixates on the facts of the First Case. However, Judge Davila's decision in the First Case is entirely distinguishable from the situation here. In particular, in finding that Bosch would not be prejudiced by a stay of the First Case, Judge Davila relied on conduct that occurred before the patents in this case had even issued – such conduct therefore could not support a stay here. Thus, Cardiocom cannot rebut Bosch's showing of the substantial prejudice and harm that Bosch would suffer if this case is stayed.

### A. Cardiocom's Significant Delay in Seeking a Stay Is in Itself Sufficient Reason to Deny the Motion.

After this case was filed, Cardiocom took three months to seek IPRs of the patents-in-suit and waited another eleven months after that before moving to stay. "Such dilatory requests for a

stay are routinely denied." *Cynosure, Inc. v. Cooltouch, Inc.*, No. 08-10026-NMG, 2009 U.S.

Dist. LEXIS 70493, at *6 (D. Mass. Aug. 10, 2009); *see also Affinity Labs of Tex. v. Apple Inc.*,

No. 09-04436 CW, 2010 U.S. Dist. LEXIS 50974, at *6 (N.D. Cal. April 29, 2010).

The reasoning in *Affinity Labs* applies here. That case was filed in March 2009 and later

transferred to this district. *Affinity Labs*, 2010 U.S. Dist. LEXIS 50974, at *6. The defendant,

however, waited until November 2009 to file its request for *inter partes* reexamination of the

asserted patent, and, once the request was granted in February 2010, it waited another seven

weeks before filing its motion to stay. *Id.* The court found that "***these significant delays weigh

heavily against granting the stay***." *Id.* (emphasis added). Here, only some of Cardiocom's

petitions were granted, and Cardiocom waited even longer after the PTO's decision on the IPRs –

almost four months – before moving to stay.

Because of the delays and the resultant prejudice to the plaintiff, the *Affinity Labs* court

denied the motion to stay even though the earlier transfer motion was the only activity that had

occurred in the case. *Id.* at *4, *6-7 (noting "[n]o discovery has taken place, no trial date has

been set and the parties have not even appeared in Court for their initial case management

conference"). Here, in contrast, Cardiocom's delay allowed significant case management,

discovery, and claim construction activity to occur, subjecting the parties to significant litigation

expenses. Thus, this case presents even more compelling reasons to deny a stay than *Affinity

Labs* did.

Cardiocom tries to excuse its delay by claiming it "minimized any potential prejudice to

Bosch by waiting to file its motion to stay until after the Board issued a decision on Cardiocom's

initial petitions." (Mot. at 20.) This argument is absurd, for two reasons. First, the PTO declined

to institute review on many of Cardiocom's arguments and on two patents entirely. Second,

Cardiocom continued to wait from January until May before filing its motion. In just those

additional four months, the litigation has progressed substantially, and Bosch has incurred

significant litigation expenses. Among other things, Bosch has reviewed Cardiocom's source

code – an important and expensive step in developing an infringement case – and supplemented

its infringement contentions. Bosch also had to develop and disclose claim construction positions

for over a hundred claim terms identified by Cardiocom – a significant burden that was particularly egregious because Cardiocom sought construction of only eight terms in the IPRs across all claims of all six patents. Thus, far from minimizing the prejudice to Bosch, Cardiocom's delay has done nothing but make a stay less and less justified.

Cardiocom alleges that Bosch's recent motions "have prompted Cardiocom to file the instant motion to stay." (Mot. at 2.) If true, this is a telling admission that Cardiocom never intended to move for a stay until things started going south in the litigation. Cardiocom lost its motion to relate this case to the First Case (which led directly to Bosch's re-transfer motion), and it faces disqualification of its original counsel, who have breached their duties of loyalty and confidentiality to Bosch by representing Cardiocom in this case (*see* Dkt. No. 59). A stay would derail the litigation and allow Cardiocom to avoid potential adverse rulings, while freeing Cardiocom to take its chances before the PTO. Thus, Cardiocom's motion is the kind of attempt to gain a tactical advantage that courts do not condone. *Cf. Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960, at *7-8 (D. Del. Sept. 2, 2010) (finding that delay "may lead to an inference that the moving party is seeking an inappropriate tactical advantage" and noting the defendant "has chosen to reveal its desire to stay litigation only after the issuance of the memorandum opinion [on the parties' motions for summary judgment]").

**B.     The Three Factors Weigh Against a Stay.**

When Cardiocom's delay in bringing its motion is considered together with all of the circumstances, it is clear that the traditional three-factor test also militates against a stay.

**1.     A Stay Will Cause Unfair Prejudice to and Disadvantage Bosch.**

Bosch faces multiple sources of unfair prejudice and irreparable harm if a stay is granted. First, as explained above, significant prejudice is directly attributable to Cardiocom's delay in seeking a stay. Moreover, Bosch is suffering and will continue to suffer significant competitive harm as a result of Cardiocom's infringement. Finally, it may take the PTO many years to complete the various proceedings Cardiocom has sought to initiate, so that by the time the patents-in-suit are upheld by the PTO and Bosch can enforce them in court, the patents would likely be expired.

### a.   Bosch Is Being Harmed in the Marketplace.

A stay will prolong the ongoing harm to Bosch caused by Cardiocom's infringing activities.  This harm cannot be reversed or compensated for.  *See* Section II.C, *supra*.  Courts have repeatedly recognized that "competitors can cause harm in the marketplace that is not compensable by readily calculable money damages."  *Avago*, 2011 U.S. Dist. LEXIS 82665, at *16 (citing *Acumed LLC v. Stryker Corp.*, 552 F.3d 1323, 1327-28 (Fed. Cir. 2008)); *accord Biomet Biologics v. Bio Rich Med.*, No. SACV 10-1582 DOC (PJWx), 2011 U.S. Dist. LEXIS 109282, at *6 (C.D. Cal. Sept. 26, 2011) ("[B]ecause Defendants allegedly continue to infringe upon Plaintiffs' patent in direct competition with Plaintiff, a delay has the potential to cause severe prejudice.").  Thus, "competition can justify denial of a stay when that competition is based on alleged infringement and has effects that would be difficult to reverse after the fact."  *Avago*, 2011 U.S. Dist. LEXIS 82665, at *17.

Cardiocom argues that because Bosch has in the past offered limited licenses for other patents to certain companies, Bosch can be entirely compensated by monetary damages.  (Mot. at 20-21.)  Both the United States Supreme Court and the Federal Circuit, however, have flatly rejected Cardiocom's licensing argument and have found "a plaintiff's willingness to license its patents" insufficient to establish that the patent holder would not suffer irreparable harm from continued infringement. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (U.S. 2006); *see also Acumed*, 551 F.3d at 1328.  Instead, a patentee's licensing activity is "but one factor for the district court to consider" when determining whether the patentee would suffer irreparable harm.  *Acumed*, 551 F.3d at 1328. ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ [3] *Cf. TPK Touch*, 2013 U.S. Dist. LEXIS 162521, at *17-19 (finding potential for competitive harm where plaintiff had lost market share to defendant and defendant was one of a few competitors "within the relevant high-end segments of

---

[3] When Bosch offered Cardiocom a patent license in 2007, the patents-in-suit had not yet issued, nor had Cardiocom been selected by the VA.

that market").

Cardiocom also suggests there is significance in the fact that Bosch never sought a preliminary injunction. (Mot. at 20.) However, this argument, too, has been squarely rejected by the courts. *See Avago*, 2011 U.S. Dist. LEXIS 82665, at *17 (rejecting defendant's contention as "flawed" and noting plaintiffs "might have other reasons for deciding not to pursue injunctive relief"); *Biomet Biologics*, 2011 U.S. Dist. LEXIS 109282, at *6-7.

Finally, Cardiocom argues that Bosch would not be prejudiced because Bosch chose not to assert the patents-in-suit in the First Case. (Mot. at 3.) There simply is no such rule. Bosch has over a hundred telehealth-related patents, and Cardiocom's suggestion that Bosch was obligated to assert them all in a single lawsuit is absurd. In bringing the First Case, Bosch acted reasonably in choosing a manageable number of patents to assert against Cardiocom. Cardiocom, however, has used the stay of the First Case not to rectify its infringement but to cement its unfairly obtained position in the market. Thus, Bosch was forced to identify additional infringed patents and file the present case. Far from showing that Bosch is not prejudiced, Bosch's bringing of this Second Case against Cardiocom demonstrates that Bosch is suffering substantial harm from Cardiocom's continued infringement.

        **b.**      <u>**The Longer the Stay, the Greater the Prejudice to Bosch.**</u>

A stay would prejudicially delay Bosch's ability to enforce its patents. There is particular urgency here because the patents-in-suit will expire beginning in late 2016, and all six patents will be expired by the end of 2017. *See Biomet Biologics*, 2011 U.S. Dist. LEXIS 109282, at *7 ("Placing the [asserted] patent in limbo for the majority of its remaining life would create a clear tactical disadvantage for Plaintiffs. Thus, the prejudice factor weighs strongly against granting [a stay]."). In addition, opportunities like the VA contracts are time-sensitive. The VA's most recent contract awards, for example, last only until 2016. A stay would effectively give Cardiocom *carte blanche* to compete against Bosch in this defined market space with a product that uses Bosch's intellectual property. And, as discussed above, money damages would not be able to compensate Bosch for the lost relationships, opportunities, and market share made available through this unique sub-market.

Cardiocom relies on the fact that the instituted IPRs may be decided in January 2015 as the basis for why a stay might not be prejudicial. (Mot. at 19.) But there is no way to know if the PTO will keep to its schedule. Cardiocom acknowledges that there could be an additional six month delay. (*Id.*) Further, Cardiocom's new IPRs risk additional delay as the PTO may consolidate the proceedings on a later schedule. *See* 35 U.S.C. § 316(a)(11) (permitting the PTO to adjust statutory deadlines "in the case of joinder").[4] Moreover, a stay until January, as explained below, would not significantly simplify the litigation because, *inter alia*, those IPRs would not apply to two of the patents-in-suit and most of the asserted claims from a third.

To the extent Cardiocom is seeking a stay that encompasses its other PTO petitions, such a stay could last far beyond January 2015.[5] For example, Cardiocom's most recent IPR petition was not filed until April 25, 2014. (Ong Decl., ¶ 13.) Bosch's preliminary response is due on July 29, 2014 (*id.*, Ex. 2), and the PTO is to issue a decision by October 29, 2014 (*see* 35 U.S.C. § 314(b)). In the event that the PTO institutes review, it would have at least one year (with a potential six-month extension) to render a final written decision. *See* 35 U.S.C. § 316(a)(11). Thus, just waiting for the other IPRs might stretch the stay through most of 2015. This does not include appeals. A stay that encompasses the *ex parte* reexaminations could last even longer. The average pendency of *ex parte* reexaminations is about two years (Ong Decl., Ex. 3), potentially taking the stay through Spring of 2016. By that time, it would be practically impossible for Bosch to litigate the patents-in-suit before they expire.

While Bosch does not believe that any of these later-filed petitions should be granted by

---

[4] In fact, when Cardiocom filed its second IPR on the '469 patent, it simultaneously filed a motion to join that IPR with the already-instituted proceeding on the '469 patent. If Cardiocom's motion is granted, the proceedings on the '469 will likely have to be delayed to allow the PTO and the parties to address the newly asserted arguments and prior art. Furthermore, Cardiocom has argued that the four instituted proceedings are related, and the PTO has entered a common schedule, so Cardiocom's joinder motion could lead to **all** of the instituted IPRs being delayed.

[5] Cardiocom's motion is singularly unclear about the scope of the stay it is seeking. Cardiocom's Notice of Motion, for example, asks for a stay "pending the decision of the *inter partes* review (IPR) **and reexamination proceedings**" (Mot. at 1 (emphasis added)), but Cardiocom concludes with a "request[] that the Court grant Cardiocom's motion to stay the litigation **until the IPR proceedings are concluded**," with no mention of reexaminations and with no explanation as to whether it means the pending IPRs or the later filed ones it now seeks to institute (*id.* at 22 (emphasis added)).

the PTO, it appears that Cardiocom will do all that it can to delay a resolution on the merits. Cardiocom proved this in its opposition to Bosch's motion to transfer, wherein Cardiocom admitted that its desired stay would last just as long as the stay in the First Case: "Cardiocom has moved to stay this case pending *inter partes* reviews and *ex parte* reexamination proceedings related to the patents in suit. ***This case would be on track with the First Case if it were stayed.***" (Dkt. No. 101 at 4 n.2 (emphasis added).) That directly contradicts Cardiocom's assertion that "the stay is likely to be shorter" in this case. (Mot. at 12.) And in the First Case, Cardiocom just filed another request for reexamination, a year and a half after its original requests, because its earlier reexamination on that patent ended in all of the claims being upheld by the PTO. (Ong Decl., ¶ 16.) This demonstrates Cardiocom's practice of prolonging a stay by taking advantage of the time it takes the PTO to conduct proceedings, even when the patent claims are valid. Cardiocom could equally use that delay tactic if a stay were granted beyond the first four IPRs.

Thus, the competitive harm to Bosch and the likelihood of substantial delay tips the "prejudice" factor strongly against a stay.

### 2. The Proceedings Before the Patent Office Will Not Significantly Simplify the Issues in the Case.

Cardiocom cannot justify a stay of this case given its delay and spotty track record before the PTO. As explained above, ***two of the six patents-in-suit and over half of the claims of a third patent are not subject to any instituted proceeding***. *See* Section II.B, *supra.* In terms of asserted claims, this amounts to 25 out of 70 asserted claims – over a third – where Cardiocom could not even meet the minimum threshold necessary to initiate *inter partes* review, let alone prove any claim is invalid. Cardiocom relies on the fact that "[e]very one of the claims that is not part of an instituted IPR is now subject to a pending IPR petition." (Mot. at 18.) But those new petitions are no more than a desperate second attempt to invalidate claims where the PTO has already rejected Cardiocom's initial effort. In addition to opposing them on the merits, Bosch is also challenging those petitions as a procedurally improper second bite at the apple. Thus, Cardiocom's hope that the Board may institute those proceedings is unfounded.

The PTO's denial of Cardiocom's original IPR petitions makes it significantly more likely

BOSCH'S OPPOSITION TO MOTION TO STAY
CASE NO. 12-CV-3864 EJD

that the PTO will ***not*** resolve many of the issues in this case. Thus, there is no basis to stay the

entire case. *See Largan*, 2011 U.S. Dist. LEXIS 25423, at \*7-10 (denying stay where not all

patents-in-suit were in reexamination).

Cardiocom also overstates the potential benefits of a stay with respect to the limited

number of claims subject to review. For example, Cardiocom supposes that "should Bosch

amend any claims," the parties will be able to avoid claim construction and discovery with

respect to the pre-amendment claims. (Mot. at 11.) However, the deadline has already passed for

Bosch to seek to amend its claims in the pending IPRs, and no amendments were filed. (Ong

Decl., ¶ 17.) In addition, if the Court requires it as a condition of denying the stay, Bosch will

agree that, even if the PTO institutes additional IPR proceedings, Bosch will not seek to amend

any asserted claims of the patents-in-suit.

Cardiocom also raises the possibility of "extensive claim construction [ ] analysis" from

the PTO to help guide this Court. (*Id.* at 3.) However, Cardiocom has made clear that it does not

see the PTO's claim construction rulings as applicable to this case. (*See, e.g.*, Ong Decl. Ex. 4 at

11 ("The following terms are construed as following, ***for purposes of this inter partes review***

***only***." (emphasis added)).) In addition, Cardiocom's IPR petitions sought construction of only

eight claim terms, and the PTO has already adopted constructions for purposes of the IPRs. Thus,

the Court already has whatever benefit may come from the PTO's claim construction and would

still be largely on its own with respect to the 35 claim terms for which Cardiocom has proposed

constructions in litigation.

At this point, the only possible benefit of a stay would be the estoppel effect of the IPRs,

which bars a party from asserting in litigation that a claim is invalid once the PTO issues a final

written decision. *See* 35 U.S.C. § 315(e)(2). However, Cardiocom served thousands of pages of

invalidity contentions in this case, citing numerous prior art references not cited in the IPRs.

(Ong Decl., ¶ 5.) Plainly Cardiocom seeks to evade the estoppel and intends to relitigate

invalidity if it loses at the PTO. Under Cardiocom's approach, then, a stay will not simplify this

case at all.

**3. Cardiocom Cannot Use Its Own Stonewalling to Justify a Stay.**

The last factor in a stay analysis asks whether discovery is complete and a trial date has been set. Under the Texas Court's schedule, the parties were set to go to trial in January 2015 – right when Cardiocom predicts the IPRs will be decided – and the parties were to have completed document discovery two weeks ago. The only reason more has not happened in this case is that Cardiocom began refusing to cooperate in the discovery and claim construction processes. For example, despite the clear deadlines set forth in the Texas Court's scheduling order and in this district's Patent Local Rules, Cardiocom ignored all of Bosch's requests to submit a joint claim construction statement. (*See* Dkt. No. 72.) In addition, Cardiocom refused to produce additional discovery because it claimed it might – at some indefinite date in the future – move to stay the case. (Ong Decl., Ex. 1.) While Cardiocom finally moved to stay on May 15, 2014 – over a year after the case began – it cannot use its own dilatory conduct to justify a stay.

Thus, this factor does not weigh in favor of a stay.

**C. Judge Davila's Decision to Stay an Earlier, Unrelated Case Does Not Control the Outcome Here.**

Cardiocom's main argument for staying this case is that an earlier, unrelated case involving different patents was stayed by Judge Davila. However, as noted above, Judge Davila has already determined that this case and the First Case are not even related cases within the meaning of the Civil Local Rules. (Case No. 12-cv-03864, Dkt. No. 64 at 2.) Furthermore, this case differs from the First Case in every respect that Judge Davila considered when staying the First Case:

- In the First Case, Cardiocom sought a stay two months after filing of the complaint and before discovery, infringement and invalidity contentions, claim construction, or any of the other activities that have occurred in this case. (*Id.*, Dkt. No. 43 at 3.) Here, Cardiocom delayed for over a year, during which there was significant progress in the litigation.

- A stay in this case is less likely to significantly simplify the issues, since (1) the PTO has already upheld over a third of the asserted claims, (2) Cardiocom has argued that

claim construction in the IPRs does not apply to district court litigation, and (3) Cardiocom has served thousands of pages of invalidity contentions, proving that it seeks to relitigate the very heart of the IPRs.

- In finding that money damages could adequately compensate Bosch, Judge Davila relied on the fact that Bosch licensed the patents in the First Case and had, in 2007, offered to license those patents to Cardiocom. (*Id.* at 5.) But Cardiocom rejected the offer, and the earliest patent in this case only issued on April 7, 2009, which was *after* the licensing offer Judge Davila relied upon. In addition, Bosch has presented evidence that Cardiocom is differently situated from Bosch's licensees and is causing competitive harm to Bosch.[6]

Thus, reliance on Judge Davila's order is insufficient to justify a stay here.

## V.    CONCLUSION

For each and all of the foregoing reasons, Bosch respectfully requests that the Court deny Cardiocom's motion to stay.

Dated: May 29, 2014

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    _____/s/ *Bas de Blank*_____
BAS DE BLANK
Attorneys for Plaintiff
ROBERT BOSCH HEALTHCARE
SYSTEMS, INC.

---

[6] In the First Case, Cardiocom waited until its reply brief to raise the issue of Bosch's licensing. Bosch was therefore deprived of the opportunity to squarely address the argument and to distinguish the licenses from the prejudice Bosch would suffer if this case were stayed and Cardiocom permitted to continue infringing. (*See* Case No. 12-3864, Dkt. Nos. 42, 44.)