UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BOSCH HEALTHCARE SYSTEMS, INC., | No. C-14-1575 EMC |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY MERCHANT & GOULD** |
| v. | |
| CARDIOCOM, LLC, *et al.*, | **(Docket No. 59)** |
| Defendants. | |

Plaintiff Robert Bosch Healthcare Systems, Inc. ("RBHS") has filed suit against Defendant Cardiocom, LLC, asserting that Cardiocom has infringed six of its patents. Currently pending before the Court is RBHS's motion in which it seeks to disqualify the Merchant & Gould ("M&G") law firm from representing Cardiocom. Having considered the parties' briefs and accompanying submissions, as well as the supplemental papers filed and lodged, the Court hereby **DENIES** the motion to disqualify.

## I.   FACTUAL & PROCEDURAL BACKGROUND

RBHS appears to be a relatively new company, having been incorporated in December 2011. *See* Docket No. 81-2 (McDonald Decl., Ex. N). RBHS, however, belongs to a well-established group of companies, many of which (but not all) have the name "Robert Bosch" in their name. Robert Bosch GmbH is the main company, located in Germany. Robert Bosch North America Corporation is a subsidiary of Robert Bosch GmbH. Robert Bosch North America Corporation in

turn has a number of wholly owned subsidiaries, one of which is RBHS. *See* Docket No. 60 (Taylor Decl. ¶¶ 3-4).

It appears that M&G began doing work for some of the Bosch entities in 2002 (well before RBHS was incorporated in December 2011).[1] *See* Docket No. 60 (Taylor Decl. ¶ 9). One of the entities that M&G worked for was Robert Bosch Corporation, now known as Robert Bosch LLC. According to RBHS, "[a]ttorneys at Robert Bosch LLC oversee and are responsible for all legal issues of the Bosch affiliated entities in North America, including, without limitation, intellectual property issues" and intellectual property litigation. Docket No. 60 (Taylor Decl. ¶ 5); Docket No. 116-3 (Supp. Taylor Decl. ¶ 4).

From 2002 to 2007 (and many years beyond), M&G continued to work for various Bosch entities. *See* Docket No. 60 (Taylor Decl. ¶ 9). Notably, M&G represented different Bosch entities in at least six patent litigation lawsuits. *See* Docket No. 60 (Taylor Decl. ¶ 11).

In September 2007, Sarah Taylor, Chief Counsel of Intellectual Property at Robert Bosch LLC, sent a retainer agreement for "General Legal Services" to M&G. *See* Docket No. 60-1 (Taylor Decl., Ex. A) (agreement). The agreement states in relevant part as follows:

- "This letter confirms that we have selected your firm as a provider of legal services for one or more of the Bosch affiliated entities in North America ('Company')."
- "It is the Company's intention to retain your services for General Legal Services on an as needed basis."
- "Before rendering any services in connection with a specific assignment, please determine and confirm . . . that no actual or potential conflicts of interest exist[] with respect to representation of the Company by you."

Docket No. 60-1 (Taylor Decl., Ex. A) (Agreement at 1-2). M&G accepted the retainer agreement in October 2007. *See* Docket No. 60-1 (Taylor Decl., Ex. A) (Agreement at 3). At the time of the retainer agreement, RBHS was not a Bosch affiliated entity in North America because it did not yet exist.

---

[1] At the time that M&G began working for the Bosch entities, it had already done some work for Cardiocom (patent prosecution in 1999). *See* Docket No. 80 (McDonald Decl. ¶ 2).

2

1    Apparently, after the retainer agreement was signed, M&G has "represented Bosch in patent
2 prosecution matters up to and including March, 2014." Docket No. 60 (Taylor Decl. ¶ 16); *see also*
3 Docket No. 61 (de Blank Decl. ¶ 14).

4    In December 2007, a press release was issued stating that the "Bosch Group" had acquired a
5 majority shareholding in Health Hero Network. *See* Docket No. 80-12 (McDonald Decl., Ex. M)
6 (press release). Health Hero was the company that originally owned the patents at issue. Previously
7 (in January 2007), Cardiocom – through its counsel M&G – had declined taking a license on any
8 patents from Health Hero. *See* Docket No. 80-2 (letter).

9    In December 2011, RBHS was formally incorporated. *See* Docket No. 81-2 (McDonald
10 Decl., Ex. N). Shortly thereafter, RBHS merged with Health Hero. *See* Docket No. 80 (McDonald
11 Decl. ¶ 10). Presumably, that is when RBHS obtained ownership of the patents at issue.

12    In July 2012, RBHS filed its first patent infringement lawsuit against Cardiocom. The
13 lawsuit (No. C-12-3864 EJD) was filed in this District and was eventually assigned to Judge Davila
14 ("EJD case"). *See* Docket No. 61 (de Blank Decl. ¶ 15). The EJD case concerned patents different
15 from those at issue but they appear to be related patents.

16    At about the time the complaint was filed in the EJD case, RBHS and Cardiocom had a
17 meeting regarding the Health Hero patent portfolio. Cardiocom brought to the meeting an attorney
18 from M&G (Daniel W. McDonald). In fact, RBHS's in-house counsel (Garry Mathis) handed a
19 copy of the complaint in the EJD case to the M&G attorney. *See* Docket No. 80 (McDonald Decl. ¶
20 3). In or about August 2012, M&G formally made an appearance on behalf of Cardiocom in the
21 EJD case. *See* Docket No. 61-14 (de Blank Decl., Ex. 14) (order granting pro hac vice application).
22 At that point, RBHS did not move to disqualify M&G. Nor did RBHS subsequently move to
23 disqualify M&G at any point in the EJD case (which is still pending).

24    In October 2012, Cardiocom moved to stay the EJD case because it had asked the PTO for
25 reexaminations of the patents at issue in the case. *See Robert Bosch Healthcare Sys., Inc. v.*
26 *Cardiocom, LLC*, No. C-12-3864 EJD (Docket No. 19) (motion). In December 2012, Judge Davila
27 granted the motion. *See id.* (Docket No. 43) (order). No further substantive litigation has taken
28 place in the EJD case because of the stay.

3

In April 2013, RHBS filed the instant lawsuit against Cardiocom, asserting different patents. *See* Docket No. 1 (complaint). The lawsuit was initially filed in the Eastern District of Texas. Shortly thereafter, in May 2013, M&G made an appearance on behalf of Cardiocom before the Texas court. *See* Docket No. 12 (application for pro hac vice). At that point, RBHS did not move to disqualify M&G.

In June 2013, Cardiocom moved to transfer the instant case to this District, *i.e.*, because of the EJD case. *See* Docket No. 15 (motion). Many months later, in March 2014, the Texas judge granted the motion, and thus this case was transferred to this Court. *See* Docket No. 51 (order). Only after the case was transferred did RBHS file the currently pending motion to disqualify M&G (in April 2014).

In March 2014, Robert Bosch LLC appears to have terminated the attorney-client relationship with M&G (at least with respect to patent matters). *See* Docket No. 86-1 (de Blank Reply Decl., Ex. A) (e-mail); Docket No. 116-3 (Supp. Taylor Decl. ¶ 16).

## II. DISCUSSION

A.  Legal Standard

> Two ethical duties are entwined in any attorney-client relationship. First is the attorney's duty of confidentiality, which fosters full and open communication between client and counsel, based on the client's understanding that the attorney is statutorily obligated to maintain the client's confidences. The second duty is the attorney's duty of undivided loyalty to the client. These ethical duties are mandated by the California Rules of Professional Conduct.

*City & County of San Francisco v. Cobra Solns., Inc.*, 38 Cal. 4th 839, 846 (2006).

"Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994). In contrast, "[t]he primary value at stake in cases of simultaneous or dual representation is the attorney's duty – and the client's legitimate expectation – of *loyalty*, rather than confidentiality." *Id.* at 284.

Nevertheless, that does not mean there is no duty of loyalty in a successive representation scenario. *Cf., e.g.*, *Damron v. Herzog*, 67 F.3d 211, 214 (9th Cir. 1995) (in applying Idaho law,

concluding that there is still a continuing duty of loyalty "with respect to matters substantially related to the initial matter of engagement"). Nor does that mean there is no duty of confidentiality in a concurrent representation scenario. *See Cobra Solns.*, 38 Cal. 4th at 847 (stating that the duty of confidentiality is an "enduring duty").

In deciding disqualification motions, courts consider whether there has been a violation of either duty or whether such a violation is threatened. *See, e.g.*, *Corns v. Laborers Int'l Union of N. Am.*, No. 09-CV-4403 YGR, 2014 U.S. Dist. LEXIS 44996, at *4-5 (N.D. Cal. Mar. 31, 2014) (stating that, "[u]nder California law, disqualification of counsel is employed to protect the integrity of the judicial process by enforcing counsel's duties of confidentiality and loyalty"). "Whether to disqualify counsel is a matter firmly committed to the district court's discretion." *Id.* at *4. "Generally, motions to disqualify counsel are disfavored since they may 'pose the very threat to the integrity of the judicial process that they purport to prevent.' Thus, the Ninth Circuit has held that requests for disqualification 'should be subjected to particularly strict judicial scrutiny.'" *Id.* at *5-6.

B.  Parties' Arguments

RBHS argues for disqualification of M&G on several grounds:

(1) Based on the September/October 2007 retainer agreement, which covers all North American Bosch entities, RBHS is a current client of M&G. Therefore, when M&G simultaneously represented RBHS and Cardiocom, M&G breached its duty of loyalty to RBHS. Because RBHS is a current client, it does not matter whether M&G's representation of RBHS is on a matter unrelated to the current lawsuit. *See Flatt*, 9 Cal. 4th at 284 (stating that, "[e]ven though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other, disqualification may nevertheless be *required*").

(2) Even if the September/October 2007 retainer agreement does not make RBHS a current client of M&G, RBHS should still be treated as a current client because M&G clearly has Robert Bosch LLC as a current client and Robert Bosch LLC oversees all legal issues for RBHS. Thus, for conflict purposes, RBHS and Robert Bosch LLC should be treated as a

single entity. If the two are treated as a single entity, then again there is a simultaneous representation of RBHS and Cardiocom, which is a violation of the duty of loyalty.

(3) There is a presumed threat to the duty of confidentiality because, when M&G previously represented other Bosch entities, including Robert Bosch LLC, it was exposed to the Bosch patent-related strategies, and those strategies will inform how RBHS prosecutes the litigation herein.

In opposition, Cardiocom makes several arguments in response – *e.g.*, contending that RBHS and Robert Bosch LLC cannot be deemed a single entity for purposes of evaluating conflicts. Cardiocom also asserts that, even if there were any conflict, RBHS impliedly waived its right to disqualify M&G because RBHS knew about the conflict as early as 2007 and certainly no later than 2012 (*i.e.*, when M&G appeared for Cardiocom in the EJD case).

C. <u>Implied Waiver</u>

The Court addresses the implied waiver issue first – *i.e.*, because it could moot out the analysis as to whether there are in fact grounds for disqualification. *See Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (stating that "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right").[2]

---

[2] RBHS contends that, while delay may be a reason to preclude disqualification in a successive representation scenario, it is not a reason to preclude disqualification in a simultaneous representation scenario (as here). *See* Reply at 12. RBHS's position is not without any support. *See, e.g.*, *Cal. Earthquake Auth. v. Metro. W. Secs., LLC*, 712 F. Supp. 2d 1124, 1133 (E.D. Cal. 2010) (noting "it is not clear that delay is a factor that should be taken into account . . . in a situation involving concurrent, as opposed to successive, representation"); *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1435 (1999) (stating that "'[t]he need to protect clients justifies applying different standards to conflicts between current clients and conflicts between former and current clients[;] [b]y not allowing implied waivers of a conflict between co-parties, the law places all of the burden of disclosure and consent on the attorney, where it belongs'"). However, the Court is not convinced.

First, *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297 (1987), indicates that a court examines unreasonable delay and resulting prejudice as a matter of equity. *See id.* at 1309. It is not clear that equity should automatically be trumped just because a client is a current client rather than a former client. Second, in *TransPerfect Global, Inc. v. MotionPoint Corp.*, No. C-10-02590 CW (JCS), 2012 U.S. Dist. LEXIS 85649 (N.D. Cal. June 20, 2012), Judge Spero pointed out that, even in a case involving simultaneous representation, disqualification may not be permitted where

For purposes of this opinion, the Court assumes that RBHS knew that M&G was representing Cardiocom as of 2012 (*i.e.*, when M&G appeared for Cardiocom in the EJD case). The question is whether RBHS also knew at that time that M&G had previously represented or was representing other Bosch entities. If so, then implied waiver would be clear.

RBHS contends that it did not have such knowledge, and there is little evidence to suggest to the contrary. However, in 2012, *Robert Bosch LLC* did have knowledge of M&G's representation of various Bosch entities. *See* Docket No. 116-13 (Supp. Taylor Decl. ¶ 5) (testifying that "Robert Bosch LLC provides oversight in the selection of outside counsel for an intellectual property engaged conducted by RBHS or any of the other Bosch affiliated entities in North America"). According to Cardiocom, in 2012, Robert Bosch LLC must also have known that M&G was representing Cardiocom in the EJD case since (according to RBHS's own evidence) "[a]ttorneys at Robert Bosch LLC oversee and are responsible for all legal issues of the Bosch affiliated entities in North America, including, without limitation, intellectual property issues." Docket No. 60 (Taylor Decl. ¶ 5).

Notably, RBHS failed to address this predicament in either its opening motion or its reply brief in support. Only after the Court allowed RBHS to provide additional evidence post-hearing did RBHS offer evidence to support the claim that Robert Bosch LLC would not have known in 2012 about M&G's representation of Cardiocom in the EJD case. As stated in the supplemental Taylor declaration, Robert Bosch LLC would not have known about M&G's representation because, even though Robert Bosch LLC is responsible for all legal issues for all North American Bosch entities, it "focuses on substantive and procedural issues and considerations in the intellectual property matters it supervises" and "does not attempt to keep track of the lawyers or law firms that have been retained by opposing parties or third parties in litigation or patent office proceedings." Docket No. 116-3 (Supp. Taylor Decl. ¶ 10). According to the supplemental declaration, Robert

---

"tactical abuse motivates the disqualification motion," and, "[i]n determining whether tactical abuse motivates the disqualification motion, it is common sense to look for any unexplained delay from the moving party that evidences such a motivation." *Id.* at *38.

7

1 Bosch LLC did not actually learn about M&G's representation of Cardiocom until approximately
2 March 2014. *See* Docket No. 116-3 (Supp. Taylor Decl. ¶ 12).

The Court has serious doubts about the above claims made in the supplemental Taylor declaration. Although the supplemental declaration asserts that Robert Bosch LLC does not keep track of who represents parties adverse to Bosch in litigation or patent office proceedings, that assertion strains credulity. It is hard to imagine any lawyer who would not make any inquiry as who is representing the opposing party. Nor does it make sense that an overseer of litigation would not attribute any significance to that information. As for the claim that Robert Bosch LLC did not actually know about M&G's representation of Cardiocom until March 2014, that is simply a naked claim, *i.e.*, a claim made in extremely conclusory terms. Notably, there are no facts in the supplemental declaration addressing the circumstances under which Robert Bosch LLC purportedly learned of this information for the first time. Nor does the e-mail of February 28, 2014, which RBHS submitted for in camera review, shed any light on the circumstances.

Accordingly, the Court is inclined to find in Cardiocom's favor on its case for implied waiver.[3] The Court, however, need not rest its decision to deny the disqualification motion based on implied waiver. This is because, even absent a waiver, there is no basis for disqualification of M&G.

D.  <u>Retainer Agreement</u>

As noted above, RBHS argues first that M&G should be disqualified because M&G is simultaneously representing both RBHS and Cardiocom. According to RBHS, M&G is currently representing RBHS because of the September/October 2007 retainer agreement discussed above, which covers all North American Bosch entities. The Court is not persuaded. At the time of the retainer agreement, RBHS did not even exist and did not exist until approximately four years later. Nothing in the retainer agreement suggests that it would apply to future Bosch entities. Any

---

[3] To the extent RBHS argues that Cardiocom would not be prejudiced by disqualification of M&G, *see River W.*, 188 Cal. App. 3d at 1313 ("find[ing] the delay in making the disqualification motion so unreasonable and the resulting prejudice so great that the law must assume an implied waiver of the right to disqualify"), the Court does not agree. Cardiocom has worked with M&G since at least 1999, and clearly the relationship between the two has been significant since at least 2012 when RBHS filed the EJD case against Cardiocom and Cardiocom hired M&G to represent it.

ambiguity in the retainer agreement should be construed against RBHS given that its affiliate, Robert Bosch LLC, was the entity who drafted the agreement. *See Victoria v. Superior Court*, 40 Cal. 3d 734, 745 (1985) (stating that "[i]t is a well-settled rule of law that ambiguities in a written contract are to be construed against the party who drafted it").

E.    RBHS and Robert Bosch LLC as Single Entity

According to RBHS, it should still prevail on the disqualification motion because, even without the retainer agreement, it should still be treated as a client of M&G by virtue of its relationship with Robert Bosch LLC, which is undisputedly a client of M&G. *See* Reply at 5.

In one of its formal opinions, the State Bar of California addressed a similar issue – *i.e.*, whether an attorney which currently represents a parent corporation may simultaneously represent a party that is adverse to a subsidiary of the parent corporation. *See* Formal Op. No. 1989-113, *available at* 1989 WL 253261. The State Bar noted that, ordinarily an "attorney owes undivided allegiance only to the corporate entity which he or she represents rather than any affiliated persons or entities." *Id.* at *2. However, "[t]here are certain limited instances when parent and subsidiary corporations should be treated as the same client for conflict purposes." *Id.* at *5. More specifically,

> [w]hen a corporation is the alter ego of another entity *or has a sufficient unity of interests*, they should be treated as the same entity for conflict purposes. In determining whether there is a sufficient unity of interests to require an attorney to disregard separate corporate entities for conflict purposes, the attorney should evaluate the separateness of the entities involved, whether corporate formalities are observed, the extent to which each entity has distinct and independent managements and board of directors, and whether, for legal purposes, one entity could be considered the alter ego of the other.

*Id.* (emphasis added).

As RBHS notes, *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223 (1999), is an instructive case on the "unity of interests" test. There, the court underscored that the alter ego test alone should not be used as a measuring stick because, *e.g.*, it "was not developed to deal with conflicts issues and . . . does not work very well in conflicts cases." For instance, "[m]any of the factors used to determine whether corporations are alter egos may have little or no bearing on whether they should be treated as one entity for purposes of attorney conflicts of

9

interest," and the alter ego test "does not encompass considerations which may be central to an alleged conflict." *Id.* at 249-52. The court instead emphasized a "'pragmatic approach'" which focuses on "the practical consequences of the attorney's relationship with the corporate family. If that relationship may give the attorney a significant practical advantage in a case against an affiliate, then the attorney can be disqualified form taking the case." *Id.* at 253.

In *Morrison* itself, the court concluded that a law firm should be disqualified from representing a party adverse to a subsidiary where the firm had previously represented the parent. This conclusion was informed by several considerations, including the following:

- "First, . . . in the course of the firm's work involving the parent corporation, it received confidential information which was substantially related to the present claim against the subsidiary." *Id.* at 245.
- Second, "the parent in this instance controls the legal affairs of the subsidiary. . . . [The law firm's] ongoing contacts with the people at [the parent] who would be managing [the subsidiary's] defense gave [the law firm] insight into the litigation philosophy of the District's adversary [*i.e.*, the subsidiary]." *Id.* at 246.
- Third, there were "integrated operations and management personnel" between the parent and the subsidiary. *Id.*

In its opposition, Cardiocom acknowledges the unity of interests test and the factors that the *Morrison Knudsen* court took into account. *See* Opp'n at 13. It argues, however, that these factors when considered weigh against disqualification. The Court agrees.

While there is evidence in RBHS's favor on the second factor (*i.e.*, that Robert Bosch LLC has a hand in controlling RBHS's legal affairs), the first factor weighs strongly against disqualification. That is, there is no real evidence that, in the course of M&G's representation of Robert Bosch LLC and/or related Bosch entities, M&G received confidential information that is *substantially related* to the present claims brought by RBHS against Cardiocom. For example, M&G's representation of Robert Bosch LLC and/or related Bosch entities involved technology completely different from that at issue in the instant case.

10

RBHS protests that the substantial relationship requirement is satisfied here because M&G has been exposed to Bosch's patent "play book" during the course of its representation of Robert Bosch LLC and/or related Bosch entities. For example, RBHS argues that M&G – by representing Robert Bosch LLC and/or related Bosch entities in patent prosecution matters and patent infringement lawsuits – has been exposed to Bosch's "views of and strategy concerning the Patent Office, claim scope, claim amendments, patentable subject matter, prior art, invalidity positions, and potential infringement" and "view[s] of and approach to patent litigation, damages, settlement, the Patent Office, post-grant review, and, specifically, the interplay between post-grant review and patent litigation." Docket No. 60 (Taylor Decl. ¶¶ 16-17). RBHS also makes reference to M&G's "insight into the institutional risk tolerance, preferred outcomes, litigation budgets and other strategic considerations that drive litigation." Docket No. 116-3 (Supp. Taylor Decl. ¶ 13).

The Court is cognizant of authority holding that "[w]here an attorney acquires knowledge about the former client's 'attitudes,' practices, business customs, 'litigation philosophy,' strengths, weaknesses or strategy, disqualification may be required for that reason alone." *Knight v. Ferguson*, 149 Cal. App. 4th 1207, 1215 (2007); *see also Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 712-13 (2003) (stating that "[w]e consider the 'subject' of a representation as including information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues"). But these cases have underscored that whether disqualification is warranted is dependent on the "specific legal and factual issues." *Id.* "[E]xposure to *general* play book information such as a former client's general litigation or settlement strategy is *not* sufficient . . . ." *Hartford Casualty Insurance Co. v. American Dairy & Food Consulting Laboratories*, No. 1:09-cv-0914 OWW SKO, 2010 U.S. Dist. LEXIS 70238 (E.D. Cal. June 17, 2000) (emphasis added). Here, the Court concludes that, even taking into account the supplemental Taylor declaration, RBHS has established at most exposure to general play book information. It has failed to establish any more specific advantage supposedly gained by M&G's prior representation. Indeed, much of the patent litigation where M&G served as counsel concluded several years ago. *See* Docket No. 60 (Taylor Decl. ¶ 11); Docket No. 80-3 to -7 (McDonald Decl., Exs. O-S).] The record does not establish the *substantial* relationship requirement.

11

1   As for the third *Morrison Knudsen* factor, it too does not weigh in favor of disqualification. That Robert Bosch LLC and RBHS "have overlapping marketing and public relation functions," Reply at 10; *see also* Docket No. 81-10 (McDonald Decl., Ex. V) (webpage from www.bosch.com, titled "Bosch worldwide – About us"), does little to evidence integrated management between the companies. While there may be some oversight over legal matters by Robert Bosch LLC, there is no evidence of substantial management control by Robert Bosch LLC. Indeed, Cardiocom has submitted evidence that prior settlement talks between RBHS and Cardiocom were directed and controlled by RBHS officials, not Robert Bosch LLC. *See* Docket No. 80 (McDonald Decl. ¶¶ 3, 5).

Accordingly, based on the *Morrison Knudsen* test, the Court concludes that (1) there is not a sufficient unity of interests between Robert Bosch LLC and RBHS such that the two should be considered a single entity for conflict purposes and (2) as a result, there is no simultaneous representation by M&G of both RBHS and Cardiocom. Without the simultaneous representation, there is no violation with respect to the duty of loyalty. Moreover, because M&G's representation of Robert Bosch LLC and/or related Bosch entities is not substantially related to the present claims asserted by RBHS against Cardiocom, there is also no violation with respect to the duty of confidentiality.

### III.   CONCLUSION

For the foregoing reasons, RBHS's motion to disqualify is denied.

This order disposes of Docket No. 59.

IT IS SO ORDERED.

Dated: June 13, 2014

_____
EDWARD M. CHEN
United States District Judge