UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BOSCH HEALTHCARE SYSTEMS, INC., | No. C-14-1575 EMC |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING *INTER PARTES* REVIEW AND REEXAMINATION OF PATENTS-IN-SUIT** |
| v. | |
| CARDIOCOM, LLC, | |
| Defendant. _____/ | **(Docket No. 98)** |

Defendant Cardiocom has moved the Court to stay proceedings in this case pending the resolution of the *inter partes* review ("IPR") and *ex parte* reexamination proceedings requested by Cardiocom regarding the six patents-in-suit. Plaintiff Bosch opposes a stay. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** Cardiocom's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Bosch and Cardiocom are direct competitors in the telehealth market. Bosch provides two telehealth systems that enable healthcare providers to manage large populations of patients, remotely configure patient devices, and identify patients needing follow-up care. These features are at the heart of the patents-in-suit.

Of note, Bosch filed an initial lawsuit ("the First Case") against Cardiocom regarding infringement of six different telehealth patents used in the same product line. *See generally Robert Bosch Healthcare Sys. v. Cardiocom, LLC*, C-12-3864 EJD, 2012 WL 6020012 (N.D. Cal. Dec. 3,

2012). Judge Davila stayed the First Case in December 2012 pending Cardiocom's petitions for reexamination of the patents filed before the U.S. Patent Office ("PTO"). *Id.*

On April 26, 2013, Bosch filed the instant case in the Eastern District of Texas ("Texas Court") alleging infringement of U.S. Patent Nos. 7,516,192 ("the '192 Patent"), 7,587,469 ("the '469 Patent"), 7,769,605 ("the '605 Patent"), 7,840,420 ("the '420 Patent"), 7,870,249 ("the '249 Patent"), and 7,921,186 ("the '186 Patent"). Docket No. 1. These six patents are separate from those involved in the First Case, but relate to the same product line. Docket No. 98 at 8:4-6. Before answering Bosch's complaint, Cardiocom filed a motion on June 17, 2013 to transfer this case to California. *Id.* at 8:9-10. In July 2013, while Cardiocom's motion to transfer was pending, Cardiocom petitioned the Patent Trial and Appeal Board ("PTAB") to institute IPR proceedings to review the validity of all six patents asserted by Bosch in this case. *Id.* at 8:22-25.

Bosch opposed Cardiocom's petitions for IPR in October 2013. *Id.* at 10:6-7. In January 2014, the PTAB denied Cardiocom's petitions as to two patents in their entirety. Docket No. 109 at 5:3-7. As to the other four patents, the PTO instituted review as to certain claims and denied the petition as to the other claims. *Id.* at 5:7-18. Oral argument on these IPRs is scheduled to occur on September 14, 2014. Docket No. 98 at 10:13-14. The PTAB is under a statutory requirement to issue final determinations on the four instituted IPRs by January 28, 2015 (unless there is good cause to extend the period and then, by no more than six months). 35 U.S.C. § 316(a)(11).

Cardiocom's parent company, Medtronic, Inc., filed petitions for IPR of the '605, '249, and '469 patents on March 6, 2014 citing different prior art. Docket No. 109 at 6:1-3. Bosch's preliminary response as to these IPR requests is due July 29, 2014. *Id.* at 15:10-14. The PTO is scheduled to issue its decision whether to institute IPR on these petitions by October 29, 2014. *Id.*

Cardiocom filed requests for *ex parte* reexamination against the '605 and '469 patents on February 27 and March 7, 2014, respectively. Schultz Decl., Docket No. 99, ¶ 13. As with the new IPR petitions, the PTO has yet to rule on either of these requests. Docket No. 109 at 6:11-12. The status of Cardiocom's petitions for IPR or reexamination proceedings is summarized in the following chart:

| Patent | PTO Decisions on July 2013 IPR Petitions | Claims Asserted in Litigation | Asserted Claims Subject to Pending Petitions for IPR | Asserted Claims Subject to Pending Petitions for Reexamination |
|---|---|---|---|---|
| 7,921,186 ("'186 patent") | Granted on claims 1-6. | 1-4, 6, 9-12, 14 and 15 | None | None |
| 7,769,605 ("'605 patent") | Denied. | 1-4 and 7-9 | 1-9 | 1-9 |
| 7,840,420 ("'420 patent") | Granted on all claims. | 1-5 | None | None |
| 7,587,469 ("'469 patent") | Granted as to claims 1, 2, and 5-10.  Denied as to claims 3, 4, and 11-22. | 1-3, 10-13, 16-19, and 22 | 1-22 | 1-22 |
| 7,870,249 ("'249 patent") | Denied. | 1, 2, 6-8, and 11-13 | 3-5, 9, 10, and 14-29 | None |
| 7,516,192 ("'192 patent") | Granted as to claims 1-19. Granted as to claims 20-37. | 1-4, 6, 8-11, 17-21, 23, 24, 26-29, 31-33, and 35-37 | None | None |

As detailed above, a substantial proportion of the claims are subject to an instituted IPR proceeding or a pending request for IPR or reexamination. Docket No. 98 at 11:7-8.

On March 10, 2014 the Texas Court granted Cardiocom's motion to transfer this case. Docket No. 51.  Following the transfer, this Court issued an order setting an initial case management conference for July 10, 2014 and ADR deadlines. Docket No. 53. The Court has not set a trial date or a hearing date for claim construction. *Id.* On May 15, 2014, Cardiocom moved to stay this case. Docket No. 109 at 4:17-19.

While this case was in Texas, neither party took depositions, conducted any discovery or filed a brief relating to claim construction. *See* Schultz Decl., Docket No. 104 at Exs. 9-12. This Court has not set deadlines for discovery, claim construction briefing, or related actions. Docket No. 53.  Finally, neither party has engaged in any ADR proceedings in either Texas or this District. *Id.*

3

## II. DISCUSSION

### A. IPR Background and Procedure

The Leahy-Smith America Invents Act ("AIA") was introduced in 2012 to replace the former reexamination proceeding with an improved IPR process. *Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, C-12-21, 2012 WL 7170593, at *1 (C.D. Cal. Dec. 19, 2012). The AIA's goal is "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." 37 C.F.R. §§ 42.100, *et seq.* The new IPR procedure "(1) reduce[s] to 12 months the time the PTO spends reviewing validity, from the previous reexamination average of 36.2 months; (2) [ ] minimize[s] duplicative efforts by increasing coordination between district court litigation and [IPR]; and (3) [ ] allow[s] limited discovery in the review proceedings." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp 2d 1028, 1029-30 (C.D. Cal. 2013) (internal citations omitted).

If the PTO institutes IPR, the proceeding is conducted before a panel of three technically-trained Administrative Patent Judges of the newly-formed Patent Trial and Appeal Board ("PTAB"). 35 U.S.C. §§ 6(a)-(c), 311. Through IPRs, the PTAB may review the patentability of one or more claims in a patent. *See* 35 U.S.C. §§ 311-19 (2013). This mechanism replaces the previous reexamination procedure by converting the process from an examinational to an adjudicative one. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)).

Once a petition for IPR is filed, the PTO must decide whether to institute IPR within three months of the patent owner's preliminary response, or in the event no response is filed, by the last date on which the response could have been filed. 35 U.S.C. § 314(b). The PTO may institute IPR only when it determines that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). This is a "more stringent [requirement] than the previous 'substantial new question of patentability' standard." *Universal Elecs., Inc.*, 943 F. Supp. 2d at 1030. After review is finalized, the party seeking IPR "is estopped from asserting that a claim is invalid 'on any ground that the petitioner raised or reasonably could have raised during that [IPR].'" *Id.* (citing 35 U.S.C. § 315(e)(2)).

If the PTO grants review, a final determination must be issued by the PTAB within one year of the institution date (unless there is good cause to extend the period and then, by no more than six months). 37 C.F.R. § 42.100(c). Extensions of the one-year period, however, "are anticipated to be rare." 77 Fed. Reg. at 48,695. After receiving a final determination from the PTAB, the parties have the option to appeal to the Federal Circuit. 35 U.S.C. §§ 141(c), 319. This direct appeal process contrasts with the old reexamination procedure which involves two possible appeals – once to the PTAB, then to the Federal Circuit – significantly extending the examination period. *Id.* at § 141(c).

B.  Legal Standard

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). One of the specified purposes of the reexamination legislation is to stay "pending litigation to enable PTO review of contested patents." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985), *aff'd on reh'g*, 771 F.2d 480 (Fed. Cir. 1985). A court may grant a stay "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination." *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007). In this district, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination or reissuance proceedings." *ASCII Corp. v. STD Entm't USA*, C-93-3415 VRW, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). While these cases discuss the framework applicable to motions to stay pending reexamination, district courts in the Ninth Circuit have applied the same framework to motions to stay pending IPR. *See, e.g.*, *Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, C-12-0021, 2012 WL 7170593, at *1 n.1 (C.D. Cal. Dec. 19, 2012). Indeed, given the expedited and expanded nature of IPR, the policies underlying the district court's authority to stay pending PTAB proceedings when IPR is instituted is even stronger than where there is a request for PTO reexamination.

To be sure, a court is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations – even if the reexaminations are relevant to the infringement claims before the Court. *See NTP, Inc. v. Research In Motion Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va 2005); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The [district] court is not required to stay judicial resolution in view of the [PTAB] reexaminations."); *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, C-06-4206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 6, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner."). The court must ultimately decide stay requests on a case-by-case basis. *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, C-13-2218 JST, 2013 WL 6021324, at *1 (N.D. Cal. Nov. 13, 2013); *Comcast*, 2007 WL 1052883, at *1 ("From a case management perspective, the possible benefits must be weighed in each instance against the possible drawbacks.").

Courts traditionally consider three main factors in determining whether to stay a case pending reexamination of a patent: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Telemac Corp. v. Teledigital, Inc.*, C-04-4696 CW, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation omitted). Courts apply the same analysis to stays pending IPRs. *See, e.g.*, *Semiconductor Energy Lab. Co.*, 2012 WL 7170593, at *1 ("The Court sees no reason why the three factor assessment would not still be relevant [to the new IPR proceedings]."). In considering these factors, courts look at the "totality of circumstances." *Pi-Net Int'l, Inc. v. Hertz Corp.*, C-12-10012, 2013 WL 7158011, at *2 (C.D. Cal. June 5, 2013).

1. <u>Stage of Litigation</u>

The early stage of litigation weighs in favor of a stay pending IPRs. *See Target Therapeutics, Inc. v. SciMed Life Sys. Inc.*, C-96-2837 DLJ, 1995 U.S. Dist. LEXIS 22517, at *4-5 (N.D. Cal. Jan. 13, 1995). Where discovery has not yet been completed and a trial date has not been set, courts are more likely to issue stays to save the parties and the Court the unnecessary

6

expenditure of judicial resources. *Asetek Holdings, Inc. v. Cooler Master Co.*, C-13-457 JST, 2014 WL 1350813, at *9 (N.D. Cal. April 3, 2014); *In re Cygnus Telecomms. Tech., LLC*, C-05-1291 RMW, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005).

In this case, discovery is far from complete; indeed, it has barely begun. In late January 2014, the parties exchanged document requests and interrogatories. Ong Decl. ¶ 4, Docket No. 110. Cardiocom served invalidity contentions on February 14, 2014. *Id.* ¶ 5. On March 14, 2014, the parties exchanged their preliminary claim constructions for the 110 identified terms across the six patents that may require construction. Docket No. 109 at 3:19-24. This Court has not held its initial case management conference and no trial or claim construction dates have been set, and the parties are not yet done with written discovery. Docket No. 53. "When, as here, there has been no material progress in the litigation, courts in this district strongly favor granting stays pending reexamination." *Pragmatus, LLC v. Facebook, Inc.*, C-11-2168 EJD, 2011 WL 4802958, at *6-7 (N.D. Cal. Oct. 11, 2011); *Microsoft Corp. v. Tivo, Inc.*, C-10-0240 LHK, 2011 WL 1748428, at *6 (N.D. Cal. May 6, 2011) ("Many courts have stayed patent infringement suits pending reexamination even after discovery was complete.").

Accordingly, this factor weighs in favor of a stay.

2. <u>Simplification of Issues and Trial</u>

Waiting for the outcome of the IPRs would simplify the issues in this case. The IPR results may eliminate the need for trial if the claims are cancelled. Additionally, even if some claims survive, the PTAB's order will facilitate trial by providing the court with the expert opinion of the PTAB and clarifying the scope of the claims. *Target Therapeutics*, 1995 U.S. Dist. LEXIS 22517, at *4-5; *AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1053 (N.D. Cal. 2011). Stated another way, even if the PTAB affirms the claims, its decision "is strong evidence that the court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence." *Evolutionary Intelligence, LLC v. Facebook, Inc.*, C-13-4202 SI, 2014 WL 261837, at *2 (N.D. Cal. Jan. 12, 2014). Further, "even if all the asserted claims survive [IPR], the case could still be simplified because [Defendant] would be bound by the estoppel provisions for [IPR] and thus could not raise before this court any arguments that it raised or reasonably could have

7

raised at the PTO in its petition." *Evolutionary Intelligence*, 2014 WL 261837, at *7-8; *see Software Rights Archive, LLC v. Facebook, Inc.*, C-12-3971 RMW, 2013 WL 5225522, at *16 (N.D. Cal. Sept. 17, 2013) ("Although there is no guarantee an IPR will eliminate all the claims at issue, the higher standard to initiate an IPR ('reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition' as opposed to 'substantial new question of patentability') gives at least some promise that certain challenged claims will be struck down or amended if the PTO grants the petitions."). Additionally, even if an IPR will only simplify some, but not all, of the issues in a case, this factor will weigh in favor of a stay. *Bosch*, 2012 WL 6020012, at *7.

Bosch argues that a stay would not significantly simplify the litigation because the instituted IPRs would not apply to two of the patents-in-suit and to most of the asserted claims of a third. Docket No. 109 at 15:6-8. Bosch further argues that the fact the PTO has denied Cardiocom's IPR application as to certain claims is indicative of the fact that Cardiocom's claims are without merit. The Court finds Bosch's arguments unpersuasive. A substantial proportion of the claims from the patents-in-suit asserted in this action have been found to warrant the scrutiny of an IPR proceeding; others are subject to pending requests for IPR or reexamination. As to those claims in IPR, there is a reasonable possibility that the PTAB will either cancel or modify some of the claims thus simplifying the scope of this case. If the PTAB affirms the claims, the Court and the parties will have the benefit of the PTAB's expert guidance.

Even though not all claims are in IPR, the value of simplification still obtains. The Court expressed the possibility during oral argument of staying the case as to those patents subject to instituted IPR and to proceed litigating those pending IPR or reexamination. However, as made apparent at the hearing, the patents-in-suit are sufficiently related such that judicial economy would not be served by such bifurcation. In addition, the allocation analysis for damages would be more complete were the case adjudicated in whole rather than tried piecemeal.

Accordingly, the Court finds that this factor weighs in favor of a stay.

### 3. Prejudice to Plaintiff

The last factor is whether the non-moving party will suffer undue prejudice or a clear tactical disadvantage as a result of a stay. *Medicis Pharm. Corp. v. Upsher-Smith Labs., Inc.*, 486 F. Supp. 2d 990, 993-94 (D. Ariz. 2007) (citing *In re Cygnus Telecomms. Tech., LLC*, 385 F. Supp. 2d at 1023)). A delay inherent in the reexamination process does not constitute undue prejudice. *AT&T Intellectual Property I*, 774 F. Supp. 2d at 1054. Perforce any delay connected in the more expeditious IPR process also does not constitute undue prejudice.

For a stay to be granted in the face of prejudice to the non-moving party, the moving party must make out a "clear case of hardship or inequity in being required to go forward." *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005) (quoting *Unidisco v. Schattner*, 210 U.S.P.Q. 622, 629 (D. Md. 1981)). Nevertheless, in evaluating prejudice, "courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent." *Sorenson v. Digital Networks N. Am., Inc.*, C-07-5568 JSW, 2008 WL 152179, at *5 (N.D. Cal. Jan. 16, 2008). Such tactics include seeking reexamination on "the eve of trial or after protracted discovery." *Id.*

The District of Delaware has adopted four sub-factors ("the Delaware Test") for evaluating prejudice that courts in this District have found helpful: "(a) the timing of the [IPR] request; (b) the timing of the request for a stay; (c) the status of [PTO] proceedings; and (d) the relationship of the parties." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012).

#### a. Timing of IPR Request

"Provided an accused infringer is diligent, delay due to preparing an IPR petition, ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not unduly prejudice the patent owner." *Asetek*, 2014 WL 1350813, at *5.

Here, Bosch filed its complaint on April 26, 2013. Docket No. 1. Cardiocom filed its requests for IPR of all six patents-in-suit in July 2013, three months after Bosch filed its complaint. Docket No. 109 at 4:25-26. Given the promptness of Cardiocom's filings, there is little indication that Cardiocom was less than diligent or sought an unfair tactical advantage. Under these facts, this

delay was not unreasonable and Bosch does not point to any tangible undue prejudice resulting from Cardiocom exercising its statutory rights. *See Software Rights Archive*, 2013 WL 5225522, at *16 ("Although defendants did wait nearly a year to file the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable under the facts here."). The Court finds that this sub-factor weighs in favor of a stay.

### b. Timing of Request for Stay

Bosch notes that Cardiocom waited eleven months after filing its petitions for IPRs before moving to stay. Docket No. 109 at 10:27-28. However, the Court finds that this eleven month "delay" did not result in undue prejudice to Bosch. This "delay" was due in large part to Bosch's decision to file this case in the Eastern District of Texas – a forum with little, if any, connection to the parties or this dispute – despite the fact that another case involving related patents was ongoing in this District. Docket No. 98 at 8:6-7. During that time, Cardiocom promptly filed a motion to transfer the case from Texas to this District. *Id.* at 8:9-10. The Texas Court did not transfer the case until March 2014. *Id.* at 8:11-13. On May 15, 2014, two months after the Texas Court transferred this case, Cardiocom moved for a stay. *Id.* at 2:17. Bosch's decision to file this case in Texas instead of in its home district, the Northern District of California, is a primary factor in the eleven month time period it took for Cardiocom to file its stay motion.

The Court also finds that Bosch exaggerates its claimed prejudice; Bosch failed to assert the patents-in-suit – which had been issued by the time the First Case was filed – in the First Case. It is undisputed that the patents asserted in the First Case relate to the same product line as the patents in this suit, yet it did not assert the patents-in-suit therein. The Court finds unpersuasive the argument that Bosch owns over one-hundred telehealth-related patents, making it unreasonable to have asserted them all in a single lawsuit. Docket No. 109 at 14:7-16.

Bosch also argues that a stay would prejudicially delay its ability to enforce its patents because all six patents-in-suit will expire by the end of 2017. *Id.* at 14:18-20. In support, Bosch cites to *Biomet Biologics v. Bio Rich Medical, Inc.* where the court stated that "[p]lacing the [asserted] patent in limbo for the majority of its remaining life would create a clear tactical disadvantage for Plaintiffs. Thus, the prejudice factor weighs strongly against granting [a stay].").

10

C-10-1582, 2011 WL 4448972, at *7 (C.D. Cal. Sept. 26, 2011). As an initial matter, *Biomet Biologics* is distinguishable from this case because it involved the old reexamination proceedings which took, on average, over two years to complete. 2011 WL 4448972, at *7. Additionally, discovery was set to close in eight months and a trial date had been set. *Id.* at *5-6. Here, by contrast, only written discovery has begun and no trial date has been set. Docket No. 98 at 16:3-8. In this case, there is no postponing of an imminent trial. Furthermore, Bosch's argument of prejudice is undermined by the fact that the key features of its telehealth systems are "at the heart of the patents-in-suit[,]" Docket No. 109 at 7:12, and yet they were not asserted in the First Case filed months before the instant case. Bosch has not displayed any real urgency in this case.

Accordingly, this sub-factor weighs in favor of a stay.

### c. Status of PTO Proceedings

A substantial proportion of the claims of the patents-in-suit are now subject to an instituted IPR proceeding; as to the others, there is a pending request for IPR or for reexamination. Docket No. 98 at 11:7-8. The PTAB IPR proceedings are advancing with oral argument scheduled for September. Even as to claims for which a request for reexamination or IPR is pending, it is not uncommon for courts in this District "to grant stays pending reexamination prior to the PTO deciding to reexamine the patent." *Pragmatus*, 2011 WL 4802958, at *3 (summarizing cases).

The Court retains the discretion to lift the stay once the IPR is completed before the PTAB; it may do so even if an appeal is filed and reexamination of other claims are pending. The Court may reevaluate all the circumstances at the appropriate time.

### d. Relationship of the Parties

Where, as here, the parties are direct competitors, the likelihood of undue prejudice to the non-moving party is heightened. *TPK Touch Solutions, Inc.*, 2013 WL 6021324, at *3 (stating that the likelihood of undue prejudice weighs against a stay where a non-moving party is a direct competitor). "Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Avago Techs. Fiber IP (Sing.) Pte. Ltd. v. IPTronics, Inc.*, C-10-2863 EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011).

Bosch and Cardiocom are two of only five telehealth vendors competing for business from the U.S. Department of Veteran Affairs ("VA"). Docket No. 109 at 7:16-20. Bosch states that when the VA selected Cardiocom as a vendor, Bosch saw its VA market share drop substantially. *Id.* ¶ 9. Bosch reasons that the harm of losing a customer to Cardiocom, particularly in the VA system, cannot be compensated by readily calculable money damages because of a "lock-in effect" wherein it would be hard to convert customers back to Bosch. *Id.*

Bosch's "lock-in effect" argument is unpersuasive. As an initial matter, this argument is undermined by Bosch's own account of its dramatic decline in market share when the VA selected Cardiocom as a vendor, suggesting that customers are not, in fact, as "locked in" as Bosch claims. Further, if the PTAB cancels, modifies, or even affirms the validity of any of the claims, it would likely streamline invalidity, claim construction, and infringement issues in this action, decreasing time spent in litigation.

Bosch's past licensing practices also tend to undermine its claim of special harm due to the parties' competitive relationship. Docket No. 109 at 13:13-21. Cardiocom argues that Bosch's willingness to license its portfolio of telehealth patents to Cardiocom and to other telehealth competitors suggests that Bosch's claim of undue prejudice or irreparable harm is exaggerated since like licensing fees, monetary damages would adequately compensate Bosch in the event infringement is found. Docket No. 98 at 6:9-11. Although Bosch points to *eBay, Inc. v. MercExchange, LLC*, where the Supreme Court found that "a plaintiff's willingness to license its patents" is insufficient to establish that the patent holder would not suffer irreparable harm from continued infringement. 547 U.S. 388, 392 (2006), a patentee's licensing activity *is* "but one factor for the district court to consider" when determining whether the patentee would suffer irreparable harm. *Acumed, LLC v. Stryker Corp.*, 552 F.3d 1323, 1328 (Fed. Cir. 2008).

Indeed, Judge Davila who presided over the First Case found that Bosch licensed different patents than those in this suit, relating to the same product line and preliminary claim maps, to several competitors and offered a license to Cardiocom, which Cardiocom rejected. *Bosch*, 2012 WL 6020012, at *5. Judge Davila held that "[t]hrough its licensing efforts, [Bosch] has enabled other companies to directly compete in its own market, thus creating competition for relationships,

12

opportunities, and market share." *Id.* This holding is underscored by Bosch's October 2012 press release announcing a license to a competitor, Waldo Health. Schultz Decl., Docket No. 104 at Ex. 4. The release states that the license applies to "Bosch's extensive telehealth portfolio" and says "[i]n 2011, Bosch Healthcare initiated an active technology licensing program." *Id.* As Judge Davila noted, Bosch constructed the environment that created any disadvantage it stands to suffer, particularly in light of Bosch's self-proclaimed "active licensing program." *Id.* Accordingly, the Court finds that this sub-factor weighs in favor of a stay.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Cardiocom's motion to stay. The stay is subject to reconsideration as PTO and PTAB proceedings progress.

This order disposes of Docket No. 98.

IT IS SO ORDERED.

Dated: July 3, 2014

_____
EDWARD M. CHEN
United States District Judge