Pages 1 – 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

ROBERT BOSCH HEALTHCARE SYSTEMS, )
INC.,                            )
                                 )
            Plaintiff,           )
                                 )
  VS.                            ) NO. C 14–01575 EMC
                                 )
CARDIOCOM, LLC, et al.,          )
                                 )  San Francisco, California
            Defendants.          )
_____  )

                        Thursday, March 2, 2017

                  TRANSCRIPT OF PROCEEDINGS
APPEARANCES:

For Plaintiff:
                    ORRICK, HERRINGTON & SUTCLIFFE
                    1000 Marsh Road
                    Menlo Park, California  94025
              BY:  BAS DE BLANK, ESQ.
                    LILLIAN J. MAO, ESQ.


For Defendant:
                    MERCHANT & GOULD
                    3200 IDS Center
                    80 South Eighth Street
                    Minneapolis, Minnesota  55402-2215
              BY:  DANIEL W. MCDONALD, ESQ.

Also Present:
                    CHAD A. HANSON, PH.D., ESQ.
                    Medtronic Senior Legal Counsel
                    710 Medtronic Parkway
                    LC300
                    Minneapolis, Minnesota  55432-5604

Reported By:  BELLE BALL, CSR 8785, CRR, RDR
              Official Reporter, U.S. District Court

**Thursday - March 2, 2017**                              **9:25 a.m.**

                        **P R O C E E D I N G S**

     **THE CLERK:**  Calling Case C-14-1575, Robert Bosch Healthcare versus CardioCom.

     Counsel, please come to the podium and state your name for the record.

     **MR. MCDONALD:**  Good afternoon, Your Honor.  For the defendant, Daniel McDonald.

     **THE COURT:**  All right.  Thank you, Mr. McDonald.

     **MR. DE BLANK:**  Good afternoon, Your Honor.  Bas de Blank for plaintiff.  And with me is Lillian Mao.

     **MS. MAO:**  Good afternoon.

     **THE COURT:**  Good afternoon.

     **MR. MCDONALD:**  Also in the courtroom with us, Your Honor -- I'm sorry -- is my client's in-house counsel, with Medtronic, Chad Hanson.

     **THE COURT:**  All right.  Welcome.  Good afternoon.

     So, we have plaintiff's motion to lift the stay here.  And, I understand that a lot can be said about the way things have been sequenced and whether or not there's been some gamesmanship on various sides in terms of the way the various IPR and reexamination proceedings have unfolded.  And it is unfortunate that this is involved in a piecemeal way.

     But the bottom line is, if you look at the factors I've got to look at, which primarily, I think, are the likelihood of

simplifications and the effect on any trial in this case, as a result of current ongoing PTO proceedings and prejudice, it seems to me that the current reexamination proceedings on the ''249 and the '605, putting aside how we got there and how long it took to get there, are significant factors.

Notwithstanding the fact, Mr. de Blank, that you chose to discuss that really in a footnote in your opening brief, which I found interesting because it seems to me it was the fact of the status of those proceedings, those reexamination proceedings, given the fact that there's been rulings now against your client, is not insignificant, and deserve consideration that transcends a footnote.  But that's where it's at.

So, to put it bluntly, there it seems to me, is a pretty good likelihood that the issues could well be simplified or maybe even eliminated in this case.

And I'm not sure why it makes sense to go forward and start getting involved in what promises to be a very extensive and expensive litigation, as all patent litigation is, when we have got now an indication, and, indeed, a final office action on the '249 rejecting the claims, the '249, and an initial rejection on the '605.

And balanced against that, given the fact that your client is no longer directly competing in the business, directly competing, and that we have two patents that have either expired or will expire within the next couple of months, therefore this

case is not about ongoing competitive injury and threat to the viability of an ongoing business going forward, but really about damages, retrospective damages, which, you know, you can get -- today, you can get a year from now, you can -- so the only prejudice is, you know, age -- evidence aging with time.

But I -- now, it seems to me, given that -- and I understand that the original basis for this Court's stay, the IPR, all that now is water under the bridge, and that this could have been done more efficiently and effectively, and more quickly, and not done in such a piecemeal fashion.

But nonetheless, where we are now, I've got to measure the standards of stay. Where we are now, just seems like the factors all tip in favor of continuing the stay.

But I'll let you comment on that.

**MR. DE BLANK:** Thank you, Your Honor. I understand your position, so I'll try to be brief.

**THE COURT:** Sure.

**MR. DE BLANK:** The two factors you identified are the simplification of the issues and the effect on trial.

And we are in a very different position, now that the IPRs have terminated, than we were when the Court weighed those factors initially and entered the stay.

And one of the big distinctions, one of the big differences is that there is no estoppel applied to CardioCom because of the *ex parte* reexams, or because of the IPRs that were terminated.

Now, in their motion to stay -- or, sorry, in their reply on Page 10, CardioCom promised the Court that one of the reasons it should grant the stay is because CardioCom will be estopped from presenting the grounds for invalidity before this Court that are presented to the PTO.  And that's no longer true.

The other issue that you raised, Your Honor, was the effect of the stay -- the stay would have on trial.  And that's where our concern about as witnesses leave both Robert Bosch --

**THE COURT:**  Before you get to that, you're saying it's a one-way street.

I mean, you concede that were your clients to not prevail with respect to the reexamination, and the office actions are sustained, that your client has nothing to prosecute.

Your complaint is that there's no estoppel effect, and so it's an -- it's a one-way ratchet.

**MR. DE BLANK:**  That's correct, Your Honor.  And that actually brings me to the proposed --

**THE COURT:**  That doesn't mean that there's a -- the likelihood or the possibility of simplification is still there.

You're arguing, really, a fairness argument, that:  Yeah, it will simplify the issues in one direction, not the other direction.

**MR. DE BLANK:**  Well, before, Your Honor, it would simplify it in each direction.  Either the patent office would confirm the claims, and then CardioCom would be estopped from presenting

art that it already raised or could have raised.  Either way, there would be simplification.

Or the patent office would reject the claims, those claims would be invalid, and again there would be simplification.

There's still the possibility of simplification if the patent office cancels the claims.  And I'm not disputing that, Your Honor.

What I'm saying is that there is -- you're right.  It's a one-way ratchet.  Half the simplification is now missing.  The half that would benefit my client, obviously.

**THE COURT:**  Right.  And therefore, one could argue that when you're talking about reexamination without the possibility of a two-way estoppel or a two-way binding effect, that the level -- the likelihood of simplification that one demands in the state formula may be higher than that what it normally would be.

But I guess my comeback or, I guess, the comeback of your opponent would be:  Well, it's pretty high, because you've got two office actions now.  One of them final.

And it's pretty far down the road.  It's not just a preliminary -- pretty far down the road.

**MR. DE BLANK:**  I understand.  And I understand the Court's concern that the claims might be invalid, and not wanting to go down the same path if the patent office is going to cancel the claims.  That is a legitimate issue.  And it's one that I think CardioCom is raising.

So what I would propose, if the Court is inclined to continue the stay, that it impose some conditions on CardioCom.

First, CardioCom has already had 14 patent office challenges on just these two patents.  Not -- I'm not talking about all six in the case.  I'm talking about these two.  There have been 14 patent office challenges.

And one of the conditions for the stay should be after taking their best 14 shots in the patent office, they should not continue to file additional *ex parte* reexams, and then continue to come to the Court and say:  Well, we lost those 14; we've lost 15, 16, 17 and 18, but we're sure somehow No. 19, 20 or 21 will be it.

So I'd ask that if the Court's inclined to limit the stay, that as a condition for that, that CardioCom agree that it not file additional challenges in the patent offense.

And then the other thing I would ask is that the Court return the parity in the estoppel provisions in the simplification.  So that if CardioCom is saying it wants to proceed with invalidity challenges in the patent office, that it accept the consequences of those decisions.  That's exactly what was happening when there was a IPR, when the Court entered the stay.

But if CardioCom wants the stay to continue, then it should agree that it will not raise in this proceeding -- if the claims survive, as we expect they will, CardioCom will not raise in

this proceeding invalidity challenges that it either had raised before or could have raised before in the IPR or *ex parte* reexams in those 14 changes it previously had.

Now, I'm not trying to be unfair.  There are certain invalidity challenges that CardioCom is precluded from raising in those proceedings.  And those, they can raise in this court if they choose to.

But the type of 101 -- 102, 103 prior art challenges that they've gone through and raised 14 of already, if they want to proceed with invalidity in the patent office, so be it.  But they should bear the consequence of that estoppel, exactly like they said they would in their reply.  And that would give us a simplification of issues that would warrant, possibly, continuing the stay.

**THE COURT:**  All right.  What's your -- what's your view of those two conditions?

**MR. MCDONALD:**  Well, I think what I can agree to without qualification, Your Honor, is that to the extent any -- CardioCom or any other Medtronic entity that I may or may not have any control over or that CardioCom has influence on might bring any reexams against these patents in the future, we wouldn't rely on anything else to extend the stay, or as a justification to continue stay, other than what's already in the record right now.  I think that totally gets to that point of what counsel for Bosch is seeking.

The ones that are -- you know, they bring up this endless-stream-of-reexaminations type of argument.  That doesn't -- this won't apply here, with that commitment that I will make today that we've got the final rejection in the one, a rejection in the other one.  Those are the ones, those are those merged proceedings.  We would basically write out those and live or die with the stay, with respect to the stay, as to the outcome of those reexams.  And I think that's suitable on that point.

On the issue of barring us from bringing up issues, that would be quite unfair, because of the nature of these *ex parte* reexams.  It's a -- speaking of a one-way street, we get to file the reexam.  And if the patent office chooses to grant it, that's what we seek to do.

But by definition, as an *ex parte* reexam, we have no further participation in the process.  To the extent Bosch makes arguments after that, we do not have a chance to respond.  We can't put in new prior art, for example.

And that's one reason why we did have multiple reexams and why the ones we have currently are so successful, is that there were certain claim limitations that the patent office didn't find in the prior proceeding.  But we went and found some good health-related prior art that nailed those particular limitations, and the control value, one that you saw, for example, mentioned in the briefing.  Then, then, that filled that hole in that.

But that was our only recourse, because we didn't have a chance during the reexam, itself.

**THE COURT:** Well, but I suppose the response is: What if there's other prior art that you've got, you know, that you could have asserted but are not asserting as a basis for reexamination, you don't prevail ultimately in reexamination, and you come to court, and we start the trial process, and you now bring in prior art that you could have well brought to the attention of the PTO, but didn't?

**MR. MCDONALD:** Well, I think even with existing law with respect to the IPRs, Your Honor, if it's art that wasn't in the IPRs, I think there is some case law that would indicate that even in that situation, that party's not estopped from bringing art that was not considered by the patent office. And that is a risk here.

I think, as a practical matter, we would recognize that it's going to be a much tougher fight for us if any claims survive this process, and to try to get in front of a jury at that point and convince them that the claims are invalid, it would be very tough.

But for us to actually waive those rights when we don't have that full chance to participate in these current PTO proceedings I think is asking too much for my client, when you look at the complete lack of prejudice.

I mean, this is their Plan B. They didn't bring this up

until the full story came out with our opposition brief about what's going on here, and the complete lack of prejudice.  And they realize full well that this stay should be continued, which could be as few as a few more months, to see how these play out.

**THE COURT:**  What do you think is the timing?  Where do you see things going?

**MR. MCDONALD:**  Well, the final rejection, the '249 patent, that's somewhat easier because tomorrow is their deadline to file an appeal.  Their reply brief says:  Well, it's not over yet, or it's not over, the claims aren't canceled.

Well, tomorrow's the deadline.  If they don't file the appeal tomorrow, the claims will be canceled.  So --

**THE COURT:**  And if an appeal is filed, what's the usual time frame?

**MR. MCDONALD:**  That goes to the PTAB for that.  That's, I think, around a year, year and a half or so to get through the process at the Patent Office Trial and Appeal Board.

And then if somebody -- they're the only ones -- we can't appeal, just to be clear on that.  They would be the only ones who could appeal at that point.  They could then take a further appeal to the Federal Circuit at that point.

**THE COURT:**  But we're seeing one or two years for the PTAB?

**MR. MCDONALD:**  I think that's about right for the appeals -- -- at that point you've already got an examiner final rejection.  You're presumptively dealing with a dead patent.

And they've got to now try to show -- meet that burden as the appellant, that their own -- the patent office's own examiner got it wrong.

THE COURT:  What about on the '605?

MR. MCDONALD:  They responded to the office action in November.  And I think that one should have an office action at any time.  Several of these reexams got through in about 12 to 15 months, from start to finish.

And I think by this summer, it's very likely we will -- or I would say next two to three months, even, I would expect to get the next office action.  And if the patent office maintains its position, that would most likely be a final rejection.  Then we would be at the same point that we are now on the '249.

THE COURT:  All right.

Your response?

MR. DE BLANK:  Yes, Your Honor.  Thank you, Your Honor.

I guess what I'm hearing from CardioCom now, is that they are not actually confident in their ability to invalidate the claims through the patent office.  If they were, they would agree that they will not file additional reexams, and that they will be bound by the patent office's decision on invalidity, exactly like they said they were going to be in their reply in the motion for the stay.

Now, however, CardioCom is neither --

THE COURT:  That's on what page?

**MR. DE BLANK:** Sorry. Page 10 of the --

**THE COURT:** Which line?

**MR. DE BLANK:** -- Docket 118.

**THE COURT:** 118?

**MR. DE BLANK:** 118. It's their reply in support of their motion for the stay. It's what they told the Court why the stay should be granted.

**THE COURT:** Oh, oh, the original.

**MR. DE BLANK:** The original motion for the stay. They told the Court that it should enter the stay, in part because CardioCom will be estopped from presenting the --

**THE COURT:** Well, that's in the IPR, relative to the IPR.

**MR. DE BLANK:** Exactly.

**THE COURT:** Not in -- because that's the way it often works. Right? I mean --

**MR. DE BLANK:** Yes.

**THE COURT:** It may not apply. As you pointed out, the reexam is a different process.

**MR. DE BLANK:** Exactly, Your Honor. It is a different process.

But if they're going to get the benefit of the stay, which is what they want, then they should accept that they have taken their best 14 chances at the patent office, and have filed their -- and accept the invalidity results from that.

**THE COURT:** Let me ask you.

They won't stipulate as to that, but let's say a stay is extended, at least for some period of time.  And ultimately they don't prevail, and now they come back to court six months from now or whenever it is, having to try, let's say, the '605 or something.

What -- does this Court have any discretion -- what happens? Is there any consequence to an unasserted basis for invalidity? Some piece of prior art, something that, as you say, could have been but was not brought to the attention of the PTO?

Does this Court have any discretion?  Or --

**MR. DE BLANK:**  I think the Court would have some inherent power and some equitable discretion to frame how invalidity is going to be presented, and what arguments would be allowed.  But there is no estoppel, as a matter of law, like there was for the IPRs, which were the basis for the stay.

**THE COURT:**  Can evidence be admitted as to what was not presented to the PTO?  For instance, if they bring up a piece of prior art?

**MR. DE BLANK:**  Yes.  We certainly would say that the experts should be allowed to testify about the merits of the patent and the willful infringement which we've alleged.

And as part of that showing, we would say:  Look, this patent has survived a number of challenges; time and again the patent office has confirmed the claims.

Now, I would suspect they will say that that's prejudicial;

the jury shouldn't consider it.  And we'll have that dispute before Your Honor.  But that would be our position.

**THE COURT:**  The point being that there is some risk to them.  It's not like they can just come back on a clean slate and act as if nothing ever happened.

In other words, something short of estoppel, there could be consequences.  Evidentiary consequences; there could be limiting rulings by this Court, perhaps short of estoppel, but --

**MR. de BLANK:**  There could, Your Honor, and we certainly would pursue that.  But what I would ask is if they want to continue the stay -- and they're the ones who want to continue it -- then they should accept the consequences of the invalidity decision.

What they really want do is have their cake, and eat it too.  They want to say:  We're very confident the patent office will invalidate these claims.  Issues will be simplified, so Your Honor should stay the case.  But if we're wrong, we also want to represent the same or different prior art that was before the patent office.

**THE COURT:**  Doesn't that risk in here in any *ex parte* reexamination process?  As opposed to the IPR process?

I mean, that's true.  Under your rationale, unless there's a willingness to stipulate to an estoppel, the Court should never grant a stay based on a reexamination petition, even if it looks very, very strong on the merits.

**MR. DE BLANK:**  That's why stays are granted much more -- much less frequently for *ex parte* reexams.  And I believe during the last hearing, Your Honor addressed that.

And in the -- the *Lotes v. Foxconn, Hon Hai* case, Judge Alsup also addressed that.  That's Exhibit 1 to the Mao declaration in our motion.

**THE COURT:**  Remind me.  Was there -- in the Alsup case, was there a final office action letter?

**MR. DE BLANK:**  There were three patents at issue, two of which stood rejected by the patent office.

The order is clear that two such patents currently stand rejected as to all claims.  A third stands valid as amended, after two prior reexaminations.  And despite the current rejections, Judge Alsup lifted the stay.

My recollection, though I can't vouch for it, is that of those two, one had a final rejection, and one didn't.  That's my recollection, but I'm not 100 percent.

**MR. MCDONALD:**  Your Honor, that's Exhibit 1 to their declaration.

**THE COURT:**  Yeah.

**MR. MCDONALD:**  And that case, if you look at the first and second and third paragraphs, you will see that case also involved additional claims relating to a breach of a patent license agreement that involved several patents owned by the defendant.

The third paragraph, the Court said (As read):

"All agree that the case can go forward as to the

claims relating to the patent license agreement..."

So they were moving forward with that case, either way,

regardless of these patents in reexam, with discovery,

et cetera.  And the Court was looking at that in that context,

and saying:  Well, given that we're going through with the rest

of this by agreement anyway, I don't think the rest of the case

should languish.  Let's put it all together.

**THE COURT:**  And the third patent stands valid, as amended,

after two prior examinations.

**MR. MCDONALD:**  So, I think that's a different situation.

**THE COURT:**  That seems to me quite different than saying the

only two patents left now have at least been found, either by

initial or final office action, to be invalid or subject to

rejection.  So, that's a different balance of the risks.

I appreciate what you're saying.  I think the Court would

normally be much more hesitant, for a number of reasons, to

grant any kind of prolonged stay, you know, in the con- -- in

the situation of a reexamination as opposed to an IPR, depending

on what has been done.

But where there's -- where we have two actions now, one of

them final, one of them I guess we'll find out soon enough, I

will say that if I were to grant the stay and there's a reversal

by the PTO in the next two months, I would welcome you back and

revisit this question.  But if that stands, you know, that's a different situation.

And, as I say, the balance of hardships, other than the time effect on evidence, this is not a live competitive respective situation.  It's a retrospective damages case.  So it just doesn't -- you know, you change any one of those factors the balance may be a little different.

I -- well, we have the representation that -- with respect to the first condition that's being sought, that no other further petition or action before the PTO or PTAB is going to be asserted as a basis for a stay.

And frankly, I would not accept it, because this has gone on long enough.  I'm not going to allow any more piecemeal administrative actions to serve as a basis for stay.  So that satisfies your first condition.

**MR. DE BLANK:**  Oh --

**THE COURT:**  Yeah?

**MR. DE BLANK:**  Sorry.  It's close, but it's slightly different on my first request, which was that CardioCom not file additional *ex parte* reexam.  They filed 14 proceedings.

Now --

**THE COURT:**  How can I -- how can I --

**MR. DE BLANK:**  Mr. McDonald can agree that -- that at least -- on behalf of his client.

**THE COURT:**  Well, if he doesn't agree, I'm not sure how this

Court can issue an order.  I mean, it seems to me, it's proper for me to say there's not going to be any other stays based on any other further proceedings, and I'm -- you're not going to get that benefit from this Court.

I don't know if I can reach out and say:  Well, and on top of that, if you dare file another *ex parte* reexamination, I'm going to lift the -- it's not a causal nexus there, other than, you know, sort of imposing a kind of a penal sanction for --

**MR. DE BLANK:**  No, no, I don't intend it to be penal, Your Honor.

What I was suggesting is that it be a condition.  And that CardioCom can make the decision, and it can consult with its client, and decide in five days that either it wants the stay, in which case as a condition it will agree --

**THE COURT:**  Well, I don't see a nexus.  I'm not going to impose that condition.

I'm going to impose the condition, hold CardioCom to what it was -- said here, and I was going to reach this conclusion independently, that there's not going to be any further bases for a stay, other than what is now currently before the Court.  So if they're going to seek another reexamination, they're not going to get any stay benefit out of it.  It's going to have to be based on the merits.

On the second, you know, I don't think I can impose an estoppel.  I suppose I could threaten to withhold the stay,

pending agreement, and extract that agreement.  But frankly, I don't think that would be intellectually honest.

Perhaps if it were a close case, and the balance of hardships, et cetera, et cetera, were -- made this a closer case, but to be intellectually honest, I don't think I could do that here, given the situation.

I can indicate, though, however, that I would be, frankly, very skeptical if somehow we do find ourselves on a trial track, and as we proceed to trial, CardioCom asserts a new invalidity defense, for instance, based on some prior art that could have and perhaps should have been presented in one of the many proceedings.

And so I will make it clear, in terms of forewarning CardioCom, that that's not going to be received well by this Court.  And to the extent that there may be inferences that can be drawn or instructed to the jury or evidence that might be admitted, that's a risk they're going to have to take.

So, as far as I'm concerned, you have taken your best shots. But I'm not going impose as a blanket matter an estoppel that I don't think has a legal basis, other than just by sort of leveraging by this Court.

And again, I think, under these circumstances, I'm not willing to do that here, other than indicate again my skepticism, if that were to happen.  Because there has been -- this could have been done more efficiently, frankly.

And I will also say that I'm going to extend the stay, but should something different proceed with respect to the PTO and the PTAB appeal that changes the likelihood of the outcome, I would invite the parties to come back here and, if not meet and confer, meet and confer and then come back here if you can't resolve it, to allow me to revisit the question.  Because right now, it is based on the fact that it looks like, the way things are going, CardioCom has a very substantial likelihood of succeeding on the merits, based on the indications so far, and that the balance of hardships does not tip in favor of Bosch.

But again, a different indication from the PTO could change that calculus.  So what I'm going to do is extend the stay.

I think we should have maybe a status conference, just to check in as a control date, maybe six months from now, and maybe sooner than that if something new develops on any front.

**THE CLERK:**  September 7th at 10:30.

**THE COURT:**  And again, if there is any new developments that are material, bring it to my attention.

**MR. DE BLANK:**  Thank you, Your Honor.

**MR. MCDONALD:**  That sounds good.

I'll say, in part to co-counsel or opposing counsel here, that if you're looking, give us a chance to talk to you about that before you file a motion with the Court.  We might at that point be able to work something out.

**MR. DE BLANK:**  Of course.

THE COURT:  Okay, great.

MR. DE BLANK:  Thank you, Your Honor.

THE COURT:  Thank you, counsel.

(Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

/s/ Belle Ball

Thursday, April 6, 2017

Belle Ball, CSR 8785, CRR, RDR